[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 7, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-13373

_____

D. C. Docket No. 03-01519-CV-ORL-31-KRS

DONOVAN GEORGE DAVIS,
DIANA ELEISE DAVIS,

Plaintiffs-Appellants,

versus

SHERIFF PHILLIP B. WILLIAMS,
DEPUTY EDWARD BECHT,

Defendants-Appellees,

JON DOE 1, a deputy who is not know at this time,
et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(June 7, 2006)**

Before TJOFLAT, BARKETT and HILL, Circuit Judges.

BARKETT, Circuit Judge:

Donovan Davis ("Davis") and his wife Diana Davis appeal a summary judgment order in favor of Deputy Edward Becht and Sheriff Phillip Williams. Donovan Davis sued Becht alleging that Becht falsely arrested him for obstruction of justice and disorderly conduct and used excessive force to do so in violation of the Fourth Amendment and various Florida state laws.[1] Davis also sued Williams, alleging that Williams was liable for Becht's actions under the Florida state law theory of respondeat superior and under 42 U.S.C. § 1983 for instituting policies that contributed to or caused Davis' injuries. Diana Davis' sole cause of action in the amended complaint (asserted solely against Becht) was a Florida state claim for a loss of consortium.

The district court ruled that Becht was entitled to qualified immunity, concluding, inter alia, that Becht did not falsely arrest Davis because there was a sufficient showing of probable cause to make the arrest.[2] As to Davis' excessive force claim, the court ruled that the force Becht used to effectuate the arrest was de

---

[1] The arrest report indicates that Davis was arrested for obstruction of justice and disorderly conduct in violation of Fla. Stat. §§ 843.02 and 877.03.

[2] Because the district court found sufficient probable cause, it concluded that there was also a sufficient showing of arguable probable cause, entitling Becht to qualified immunity. See Davis v. Williams, No. 603-CV-1519-ORL-31KRS, 2005 WL 1126658, at *9 (M. D. Fla. May 05, 2005).

minimus.  The district court also granted summary judgment in favor of Williams because there was no underlying wrongful act or constitutional violation for which he could be held liable.[3]  For the reasons set forth below, we reverse and remand for further proceedings.

## I.  STANDARDS OF REVIEW

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Because there is no dispute that Deputy Becht was performing his discretionary functions as a deputy, the burden shifts to Davis to show that qualified immunity is not appropriate.  Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002).

Qualified immunity is a two-part inquiry set forth in Saucier v. Katz, 533 U.S. 194, 201 (2001).  First we ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Id.  If, assuming the plaintiff's allegations were true, no such right would have been violated, the analysis is complete.  However, if a

---

[3] The remaining claims were also dismissed because they were dependent upon the false arrest and excessive force claims.

3

constitutional violation can be made out on the plaintiff's facts, we then must determine "whether, at the time of the incident, every objectively reasonable police officer would have realized the acts violated already clearly established federal law." Garrett v. Athens-Clarke County, 378 F.3d 1274, 1278-79 (11th Cir. 2004) (citing Saucier, 533 U.S. at 201-02). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (citation omitted). "[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances. . . . Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding." Id. at 741. In the context of a claim for false arrest, an officer is entitled to qualified immunity where that officer had "arguable probable cause," that is, where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest" the plaintiff. Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004) (quoting Von Stein v. Brescher, 904 F.2d 572, 579 (11th Cir. 1990)).

To determine whether arguable probable cause exists, courts must look to

the totality of the circumstances.  At the summary judgment stage, courts view the totality of the circumstances in the light most favorable to the nonmoving party.  See Skrtich v. Thornton, 280 F.3d 1295, 1299 (11th Cir. 2002); Evans v. Stephens, 407 F.3d 1272, 1277 (11th Cir. 2005).  That is, courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party and  "when conflicts arise between the facts evidenced by the parties, we credit the nonmoving party's version."  Evans, 407 F.3d at 1278.  Even though the "'facts,' as accepted at the summary judgment stage of the proceedings, may not be the 'actual' facts of the case," Priester v. City of Riviera Beach, 208 F.3d 919, 925 n.3 (11th Cir. 2000), our analysis for purposes of summary judgment must begin with a description of the facts in the light most favorable to the plaintiff, Skrtich, 280 F.3d at 1299.

## II.  BACKGROUND

The facts, viewed in the light most favorable to Davis, reflect the following.  On the evening of Davis' arrest, the Davises were hosting a "family get-together."  At one point, Davis noticed flashing police lights outside his house.  Concerned that some family members who had not yet arrived may have been in an accident, he went outside to investigate.  He walked down his driveway, Davis Lane, which is approximately 1,000 feet long, towards the police lights.  Unbeknownst to

5

Davis, Deputy Becht and Deputy Barrett Bright were conducting a traffic stop. The deputies had initiated the stop at the street connecting to Davis Lane, and followed the vehicle onto Davis Lane, where it came to a stop 250 feet from Davis' front door.

As Davis approached the deputies,[4] with his hands in the air, the following exchanged occurred:

> Davis: Officer I'm the homeowner.  What's the problem.
> Becht: Get away from here.
> Davis: Officer, I live here.
> Becht: Leave now.

Davis asked "what's wrong," but nonetheless, "turn[ed] away and . . . walk[ed] up to the concrete" closer to his house.  He noticed, however, that the police car was blocking Davis Lane, forcing cars to drive onto another part of his property, which ended in an unlit lake.  Believing this to be dangerous, Davis asked Becht if Davis could direct traffic to avoid possible accidents involving the lake.  Becht's response was: "Leave now or I'll arrest you."  When Davis asked Becht why he would be arrested, Becht again ordered him to leave.  Davis turned toward the house, but asked if he could speak with Becht's superior and one of Davis' guests

---

[4] The record indicates a conflict concerning Davis' demeanor as he approached Becht. For purposes of summary judgment, we accept Davis' version that he did not talk in a loud voice or yell at the deputies.

asked for Becht's badge number.[5] Becht's response again was to tell Davis that if he continued to say anything, he would be arrested. Accordingly, Davis started toward the house. At that point, with Davis' back to Becht and Davis heading toward the house, Becht and Bright grabbed Davis from behind, twisted his arms behind his back and handcuffed him. Davis tried to tell Becht that he had an injured shoulder and was in pain. Becht's response was to push his arm "hard way up," causing greater pain. Davis was then handcuffed, and forced to the ground by Becht pushing on his bad shoulder.

Becht dragged Davis to the police car, which was a canine unit, and forced him down on the ground again, while pulling hard on his shoulder. In the meantime, Bright pulled the police dog out of its cage in the back of the unit and Becht dragged, pushed or threw Davis very hard into the dog cage causing him to hit his head on the top of the car as he entered.[6] Still handcuffed, Davis slid across the bottom of the cage, hit his head and shoulder on the opposite side of the cage and had to lay down on the metal floor of the cage. Davis was then driven in the cage, not to the police station, but to a nearby parking lot to wait for another

---

[5] Davis had exited the house with one of his guests. Davis states that no other guest exited the house until after he was arrested.

[6] Although Becht claims a crowd was walking towards the vehicles and that Davis was yelling for them to come help him, Davis denies this and claims he only called for his wife and asked her not to leave after he was arrested.

7

vehicle to transport him to the police station. After the incident, Davis' neck and thumb were swollen, and he could not move his arms. He was diagnosed with a torn rotator cuff in his right shoulder, for which he underwent a surgical repair.

## III. DISCUSSION

The district court found that there was sufficient probable cause and, thus, arguable probable cause.[7] On appeal, Davis argues that the district court's opinion must be reversed because the district court improperly resolved factual disputes against Davis and ignored material facts crucial to his case. Davis argues that the facts set forth above, viewed under the correct legal standard, reflect a violation of a clearly established constitutional right such that Becht did not have even arguable probable cause to arrest him.[8]

### A.

Whether there was arguable probable cause to arrest Davis depends upon what amounts to probable cause under Florida law for obstruction of justice and disorderly conduct. Obstruction of justice is codified in Florida Statute § 843.02,

---

[7] We begin our analysis with arguable probable cause and qualified immunity because if, as we hold, there is an insufficient showing of arguable probable cause, then there is clearly an insufficient showing of probable cause.

[8] Our inquiry focuses on the first step of the qualified immunity analysis – whether Davis' constitutional rights were violated. There is no question that the second step – clearly established – is satisfied, as it is clearly established that an arrest made without probable cause violates the Fourth Amendment. Thornton v. City of Macon, 132 F.3d 1395, 1399 (11th Cir. 1998) (citing Von Stein v. Brescher, 904 F.2d 572, 579 (11th Cir. 1990)).

8

which provides:

> Whoever shall resist, obstruct, or oppose any officer . . . in the execution of legal process or in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree . . . .

Fla. Stat. § 843.02. To support a conviction pursuant to § 843.02, the state must prove: "(1) the officer was engaged in the lawful execution of a legal duty; and (2) the action by the defendant constituted obstruction or resistance of that lawful duty." Slydell v. State, 792 So. 2d 667, 671 (Fla. Dist. Ct. App. 2001); S.G.K. v. State, 657 So. 2d 1246, 1247 (Fla. Dist. Ct. App. 1995). In this case, our inquiry focuses on the second requirement because there is no question that deputy Becht was in the process of conducting a traffic stop for the purpose of issuing a citation, and thus, he was engaged in the lawful execution of a legal duty.

Florida courts have generally held, with very limited exceptions, that physical conduct must accompany offensive words to support a conviction under §843.02.[9] See Francis v. State, 736 So. 2d 97, 99 (Fla. Dist. Ct. App. 1999) (holding that defendant's actions of physically blocking the officer's path to investigate a beating in another room constituted obstruction under § 843.02); State v. Dennis, 684 So. 2d 848, 849 (Fla. Dist. Ct. App. 1996) (holding police did not

---

[9] "Words alone may result in obstruction of justice where the officer in question is 1) serving process; 2) legally detaining a person; or 3) asking for assistance." Francis v. State, 736 So. 2d 97, 99 n.2 (Fla. Dist. Ct. App. 1999).

have probable cause to arrest defendant for obstruction when defendant was yelling street term "ninety nine" which means police were in the area while undercover officers were attempting drug bust of drug dealer); D.G. v. State, 661 So. 2d 75, 76 (Fla. Dist. Ct. App. 1995) (finding juvenile's verbal protests and refusal to answer officer's questions, unaccompanied by physical opposition or threats, did not constitute obstruction).

In J.G.D. v. State, 724 So. 2d 711, 711-12 (Fla. Dist. Ct. App. 1999), the court held that no probable cause for arrest for obstruction existed despite a police order directing the defendant to leave an apartment complex, despite the defendant's "loud and profane" protests, and despite the gathering of an "unruly crowd." Id. at 711. The court ruled that the defendant's words were insufficient to justify any wrongdoing, or to amount to a physical obstruction of the officers. See id. at 712. Similarly, in D.G., 661 So. 2d 75, the court ruled that the defendant's actions did not constitute obstruction under § 843.02. In that case, the officers were investigating a burglary. The perpetrator was believed to have been seen heading towards the defendant's house. When the officers woke the defendant, he protested "loudly and obnoxiously," but he never threatened anyone. Id. at 76. "The officers arrested [the defendant] for disorderly conduct because he refused to stop yelling after several warnings." Id. The court found no probable cause for the

10

arrest.

In <u>Wilkerson v. State</u>, 556 So. 2d 453 (Fla. Dist. Ct. App. 1990), a case relied upon by Becht, the court held that the statute at issue here was constitutional because the statute proscribed only acts or conduct which operated to physically oppose an officer in the performance of lawful duties, and not solely verbal interruptions of police. <u>Id.</u> at 456. In <u>Wilkerson</u>, officers had drug dealers and customers on the ground and were searching them for weapons. The defendant directly and deliberately interrupted the search by yelling, cursing at the officers, refusing to leave the area, and generating the same conduct in a crowd that had gathered.[10] Moreover, the search took place on a dangerous corner known for drug activity. The court ruled that her presence <u>did</u> amount to a physical obstruction of the officer's ability to perform his job. <u>Id.</u> at 456.

Finally, in <u>H.A.P. v. State</u>, 834 So. 2d 237 (Fla. Dist. Ct. App. 2002), another case relied upon by Becht, the defendant was arrested not merely for cursing at officers and refusing to leave the area, but rather because a SWAT team in a dangerous situation was required to temporarily postpone the execution of a search warrant as the defendant had become a physical distraction by shouting

---

[10] Wilkerson was also searched and arrested for: (1) possession of crack cocaine, in violation of section 893.13(1)(f); (2) possession of cannabis, in violation of section 893.13(1)(g); (3) possession of illicit drug paraphernalia, in violation of section 893.147; and (4) obstruction of a law officer in the execution of his legal duties.

11

louder and more profanely as a large crowd gathered.  Id. at 238-39.

With reference to disorderly conduct, Fla. Stat. § 877.03 provides in relevant

part:

> Whoever commits such acts as are of a nature to corrupt the public morals, or outrage the sense of public decency, or affect the peace and quiet of persons who may witness them, or engages in brawling or fighting or engages in such conduct as to constitute a breach of the peace or disorderly conduct, shall be guilty of a misdemeanor in the second degree . . . .

Fla. Stat. § 877.03.  Similar to probable cause for purposes of § 843.02, probable

cause for purposes of § 877.03 cannot be based on "mere words."  See Butler v.

Dowling, 750 So. 2d 674 (Fla. Dist. Ct. App. 1999) (finding no arguable probable

cause under § 877.03 when plaintiff was not using profanity, was not yelling, and

was not agitated); see also Bell v. Anderson, 414 So. 2d 550 (Fla. Dist. Ct. App.

1982) (finding no probable cause for criminal action because words did not incite a

breach of the peace).

The facts in this case, viewed in the light most favorable to Davis under the

law, cannot support a finding of even arguable probable cause for either

obstruction of justice or disorderly conduct.  First, it is undisputed that Davis did

not physically interfere with or obstruct the deputies.  Becht testified that Davis did

not get closer to him than 75 to 90 feet before his arrest, Bright testified that Davis

12

never got closer than 45 to 60 feet, and Davis testified that he never got closer than ten feet from the entire scene. In his deposition, Davis states that he never made physical or verbal threats towards Becht, never sought to incite violence, and never told the deputies to get off his property. Moreover, he claims that he approached the deputies with his hands in the air in a respectful manner and did not yell, but rather was "talking." In his deposition, he states he only approached the deputies initially because he was concerned that they might be there to tell him his children, who had not yet arrived, might have been injured. He only turned back to the deputies to ask if he could direct traffic on his property so that his guests, who had not yet arrived, would not drive down the unlit portion of his property and into the lake. According to Davis, it was only after he asked to speak to Becht's supervisor and while he was walking away, that Becht and Bright grabbed him and pulled him back into the situation. Davis also claims that throughout both incidents he was with only one other guest until he was arrested. That guest said nothing throughout the entire incident, except to ask for Becht's badge number moments before Davis was arrested.

In his deposition, Deputy Bright, the only other deputy on the scene, specifically testified that he never considered Davis a threat to himself or to Becht, that Davis did not make "any threatening remarks," and that Davis was arrested

13

only because he yelled.  The most that Becht could say about Davis under his own version of the facts was that Davis was simply yelling and Becht had to "walk away from the traffic stop to see what he wanted."  It is clear that in neither of the incidents did Becht give Davis an opportunity to explain his concerns or to give a warning about the endangerment of his guests, who would have to circumvent the deputies and the stopped car to continue onto the Davis property.

Neither an owner's simple inquiry as to why officers are present on his property nor a person's attempt to bring a dangerous situation to the officer's attention can be construed as obstruction of justice or disorderly conduct.  Nor can a citizen be precluded by the threat of arrest from asking to speak to an officer's superior or from asking for an officer's badge number.  Those inquiries likewise do not constitute obstruction of justice or disorderly conduct.

Under the facts as alleged by Davis, we find that there was no arguable probable cause to arrest Davis, and, therefore, we reverse.  We also reverse that portion of the district court's opinion dismissing Davis' false arrest claim under Florida state law because the standard for probable cause is "the same under federal and Florida state law."  Rankin v. Evans, 133 F.3d 1425, 1433 (11th Cir. 1998).

**B.**

14

Davis also alleges that Becht used excessive force against him, resulting, inter alia, in a torn rotator cuff, numbness to his thumb, and a sore neck. It is clearly established that the use of excessive force in carrying out an arrest constitutes a violation of the Fourth Amendment. Thornton v. City of Macon, 132 F.3d 1395, 1400 (11th Cir. 1998) (citing Graham v. Connor, 490 U.S. 386, 394 (1989); Cottrell v. Caldwell, 85 F.3d 1480, 1492 (11th Cir. 1996)). Whether the force used is reasonable turns on "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Thornton, 132 F.3d at 1400 (quoting Graham, 490 U.S. at 396). "An officer will be entitled to qualified immunity if his actions were objectively reasonable – that is, if a reasonable officer in the same situation would have believed that the force used was not excessive." Id. at 1400 (internal quotation marks omitted).

Even if the arrest had been effectuated based on probable cause, the district court improperly granted the Defendants' motions for summary judgment on Davis' excessive force claim. Accepting Davis' version of the facts, a reasonable jury could find that Becht's actions in effectuating the arrest constituted excessive force. Davis was not suspected of having committed a serious crime, he did not

15

pose an immediate threat to anyone, and he did not actively resist arrest. Yet Becht grabbed Davis from behind while Davis was following Becht's order to return to the house, pushed him to the ground, dragged him, intentionally inflicted more pain when told that Davis had an injured shoulder and threw him forcibly into the dog cage in a canine unit, all while a compliant Davis was already in handcuffs.

Becht cites Rodriguez v. Farrell, 280 F.3d 1341 (11th Cir. 2002) to support his argument that "grabb[ing] [an individual's] arm, twist[ing] it around [the individual's] back, jerking it up high to the shoulder and then handcuff[ing the individual]" was not excessive; and to justify his proposition that "[w]hat would ordinarily be considered reasonable force does not become excessive force when the force aggravates (however severely) a pre-existing condition the extent of which was unknown to the officer at the time." Id. at 1345, 1351. Rodriguez is easily distinguishable from this case. First, unlike the plaintiff in Rodriguez, Davis claims he informed Becht almost immediately that he had a bad shoulder. Second, unlike the officer in Rodriguez, Becht was accused of intentionally focusing on the sore shoulder as to inflict further pain. Third, the entire incident in Rodriguez was a single event in which the officer grabbed, twisted, and handcuffed the plaintiff's arms (we described the incident as nothing more than "ordinary"). Here, there were at least three incidents of Becht intentionally grabbing, pushing, or pulling

16

Davis' shoulder – after he was handcuffed and after Davis informed Becht that he had a sore shoulder – and forcing him to the ground by intentionally applying stress to the shoulder.

We come to a similar conclusion on Davis' excessive force claim under Florida law. Pursuant to Florida law, police officers are entitled to a presumption of good faith in regard to the use of force applied during a lawful arrest, and officers are only liable for damage where the force used is "clearly excessive." City of Miami v. Sanders, 672 So. 2d 46, 47 (Fla. Dist. Ct. App. 1996). If an officer uses excessive force, the "ordinarily protected use of force . . . is transformed into a battery." Id. Based on the facts and reasoning set forth above, we find that there is a triable issue of fact as to whether excessive force was used.

## C.

We reverse the district court's dismissal of the five remaining claims.[11] The district court dismissed these claims based on its granting of summary judgment on Davis' false arrest and excessive force claims and decided no other issues. Because we reverse the district court's opinion concerning the false arrest and the

---

[11] The claims, set forth in the amended complaint, are: Count III, loss of consortium; Count IV, against Williams under the state law theory of respondeat superior; and Counts VI, VII, VIII against Williams under Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978), alleging that Williams instituted policies that contributed to or caused Davis' injuries.

17

excessive force claims, we must reverse the five dependant claims.

## IV. CONCLUSION

Accordingly, the order of the district court granting summary judgment dismissing Davis' claims is **REVERSED**.  The case is **REMANDED** for further proceedings consistent with this opinion.