[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPT 27, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-11208
Non-Argument Calendar
_____

D. C. Docket No. 04-20707-CV-CMA

BENTLEY KILLMON,
JARED ALDRIDGE,
PAUL BAME,
STEFANO BLOCH,
STEVEN DIAMOND, et al.,

Plaintiffs-Appellees,

versus

THE CITY OF MIAMI, A municipal entity, et al.,

Defendants,

M. NEILLY, Officer,
N. MANDERA, Broward Sheriff's Office,
LLOYD BINGHAM,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(September 27, 2006)**

Before TJOFLAT, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Three officers of the Broward County Sheriff, Manfreth Neilly, Nancy Mandera, and Lloyd Bingham (the Officers), appeal the denial of their motion to dismiss based on qualified immunity. Bentley Killmon, Caleb Selman, and Lawrence Winawer (the Protesters) complain that they were wrongfully arrested by the Officers, without probable cause, in violation of the Fourth Amendment. We affirm.

## I. BACKGROUND

We take as true the factual allegations of the third amended complaint. In late November 2003, Killmon, Selman, and Winawer traveled to Miami to protest the economic policies of Free Trade Area of the Americas, the member countries of which were meeting in Miami. On November 20, they participated in a lawful, permitted rally and march organized by the AFL-CIO. Law enforcement officials had prohibited all chartered buses from picking up their passengers at the amphitheater where the march ended.

After completing the march, Protester Bentley Killmon, a 71-year old retiree and Korean war veteran, and Protester Caleb Selman, a student at Florida State University, attempted to find their buses for the return trip home. Protester

Lawrence Winawer, an employee of the association of retirees to which Killmon belonged, accompanied Killmon.  Killmon and Winawer asked a lieutenant from the Miami-Dade Police Department in which direction they should disperse and were told to proceed down a set of railroad tracks.

After following the lieutenant's instructions, the Protesters were arrested. When they were arrested, Killmon, Selman, and Winawer were more than a mile from the amphitheater, walking peacefully in a group of 15 to 20 people.  A contingent of police officers from the Broward Sheriff's Office commanded by Captain John Brooks stopped the group and arbitrarily arrested some of its members while letting others go free.

For two of the three arrests, the charges were dropped.  Killmon was arrested by Officer Neilly and charged with engaging in an unlawful assembly, but all charges against him were dismissed at his initial bond hearing.  Selman was arrested by Officer Bingham and pleaded no contest to a misdemeanor after being told that if he had no money for bail, he could be held in jail for up to three weeks. Winawer was arrested by Officer Mandera and charged with disorderly conduct, which was reduced to a charge of failure to obey before being dismissed nolle prosequi.

The Protesters, along with several other Plaintiffs allegedly subjected to

warrantless misdemeanor arrests, filed a complaint against numerous municipal entities, public officials, and law enforcement officers. The district court denied the Officers' motion to dismiss based on the defense of qualified immunity. The district court rejected the argument of the Officers that probable cause existed because the Protesters were trespassing upon the railroad tracks in violation of Florida Statute section 810.09. It held that two of the elements of trespassing under section 810.09–entering the property willfully and doing so despite notice against entering–did not exist under the facts alleged in the complaint. The court also rejected the argument that the Officers had probable cause because they were following orders. It stated that this Court has been generally hostile to the "following orders" defense and noted that we have credited the defense only when there were independent reasons the officer could have believed a search or seizure was reasonable.

## II. STANDARD OF REVIEW

An order denying a motion to dismiss is reviewed de novo, "accepting the factual allegations in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." Dalrymple v. Reno, 334 F.3d 991, 994 (11th Cir. 2003).

## III. DISCUSSION

Two issues are presented for our consideration: whether we have jurisdiction

4

to review the district court's denial of the motion to dismiss based on qualified immunity, and, if so, whether the district court correctly denied the motion to dismiss. We answer both questions in the affirmative. Each issue is discussed in turn.

*A. This Court Has Jurisdiction To Review the Denial of the Officers' Qualified Immunity Defense Because the Denial Turns on a Question of Law.*

To overcome a defense of qualified immunity, a plaintiff must establish that the defendant violated a constitutional right that was clearly established when the violation occurred. Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001). Whether a complaint alleges a violation of a clearly established right is a question of law. Williams v. Alabama State University, 102 F.3d 1179, 1182 (11th Cir. 1997); Siegert v. Gilley, 500 U.S. 226, 232, 111 S. Ct. 1789, 1793 (1991). To the extent that "a district court's denial of a claim of qualified immunity...turns on an issue of law, [that denial] is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." Mitchell v. Forsyth, 472 U.S. 511, 530, 105 S. Ct. 2806, 2817 (1985). We have jurisdiction to review a denial of qualified immunity that turns on whether the complaint alleges a violation of a clearly established right.

The Protesters' argument that we lack jurisdiction fails. We have

5

jurisdiction over this appeal, because the denial of the Officers' defense of qualified immunity turns on whether the complaint of the Protesters alleges a violation of a clearly established right. The complaint alleges that the Officers were ordered by their commander to arrest the Protesters who were walking peacefully on the railroad tracks as instructed by other police officers. The Officers argue that these allegations require a finding of probable cause, and the Protesters respond that the complaint adequately alleges an arrest without probable cause. The dispute then does not turn on the sufficiency of the evidence, which would foreclose our jurisdiction, Koch v. Rugg, 221 F.3d 1283, 1296 (11th Cir. 2000); instead, this appeal turns on whether the facts alleged in the complaint establish that the Protesters were arrested without probable cause.

### B. The District Court Properly Denied the Officers' Defense of Qualified Immunity.

The evaluation of a defense of qualified immunity involves three steps. A public official who asserts a defense of qualified immunity "must first prove that he was acting within the scope of his discretionary authority when the wrongful acts occurred." Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). The burden then shifts to the plaintiffs, who must establish that the defendants' conduct violated the Constitution. Hope v. Pelzer, 536 U.S. 730, 736, 122 S. Ct. 2508, 2513 (2002). In the final step, the plaintiffs must establish that the constitutional

6

right was clearly established when the violation occurred. Saucier v. Katz, 533 U.S. at 201. This appeal turns on the second step.

The Officers do not dispute that it was clearly established, under the Fourth Amendment, that the arrests of the Protesters had to be supported by probable cause. The dispute is whether the relevant level of probable cause existed. A police officer charged with unlawful arrest is entitled to qualified immunity if there was arguable probable cause to make the arrest. Durruthy v. Pastor, 351 F.3d 1080, 1089 (11th Cir. 2003). "Arguable probable cause exists when an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." Id. (internal quote omitted). The Officers argue that they had arguable probable cause, and the Protesters deny it. We must resolve that dispute by reviewing the allegations of the complaint.

Taking its allegations as true, the complaint establishes that the Protesters were arrested without arguable probable cause. Killmon, Selman, and Winawer were arrested hours after and more than a mile away from where the march had ended. The complaint alleges that neither the arresting officers nor Captain Brooks saw the Protesters violate any law.

The Officers make two arguments about the existence of arguable probable cause, but both arguments fail. First, they assert that they were following orders,

7

and that the "fellow-officer" rule, Fla. Stat. Ann. § 901.18, allows an officer to rely on the probable cause determination of another. They argue that it was reasonable for the Officers to assume that their commanding officer, Captain Brooks, had probable cause to order the arrest of the Protesters.

The problem with this first argument is that the Officers were with Captain Brooks the entire time. They saw what he saw. When an officer is present with a fellow officer and both observe the same course of events, it is unreasonable for an officer to rely upon the fellow-officer rule to determine that probable cause exists.

Florida courts apply the fellow-officer rule when the arresting officer was absent for a significant portion of the events that gave rise to probable cause. See, e.g., Voorhees v. State, 699 So.2d 602 (Fla. 1997); State v. Boatman, 901 So.2d 222 205 (Fla. 2d DCA 2005); Huebner v. State, 731 So.2d 40 (Fla. 4th DCA 1999); State v. Eldridge, 565 So.2d 787 (Fla. 2d DCA 1990). It is reasonable for an officer in that situation to rely upon his fellow officer's judgment about probable cause. The rule typically requires that the fellow officer actually communicate to the arresting officer the basis for probable cause. See Voorhees, 699 So.2d at 609 ("The fellow officer rule allows an arresting officer to assume probable cause to arrest a suspect *from information supplied by other officers*." (emphasis added)). When the arresting officer observed the same events as his

8

fellow officer, the fellow-officer rule does not apply. As the district court acknowledged and we have explained, "the 'just following orders' defense has not occupied a respected position in our jurisprudence, and officers in such cases may be held liable under § 1983 if there is a 'reason why any of them should question the validity of that order.'" O'Rourke v. Hayes, 378 F.3d 1201, 1210 n.5 (11th Cir. 2004).

Second, the Officers argue that, because walking on railroad tracks is a criminal trespass under Florida law, arguable probable cause existed to arrest the Protesters. This argument also fails. As the district court explained, the complaint alleges the absence of at least one element of the offense of trespass as defined by Florida law–that a person "willfully enter[] upon or remain[] in any property other than a structure or conveyance." Fla. Stat. Ann. § 810.09(1)(a). The Protesters allege that they were directed, even "herded," onto the railroad tracks by police officers. They also allege that the law enforcement operation that day was highly coordinated. It is reasonable to infer that the Officers and their commander were aware that the dispersing protesters had been directed onto the railroad tracks by other police officers, which means that the Officers should have known that the Protesters were not on the tracks willfully. The complaint adequately alleges that the Protesters were arrested in violation of their clearly established Fourth

9

Amendment rights.

We do not address the argument of the Officers, which is raised for the first time on appeal, in a footnote of their initial brief, that Selman is barred from complaining about the absence of probable cause for his arrest, because he pleaded no contest to his misdemeanor charge. See generally Heck v. Humphrey, 512 U.S. 477, 114 S. Ct. 2364 (1994). Ordinarily we will not address an argument that was not raised in the district court. Ochran v. United States, 117 F.3d 495, 502 (11th Cir. 1997). This issue is best addressed, in the first instance, by the district court.

## IV. CONCLUSION

The denial of the Officers' motion to dismiss is

**AFFIRMED.**