QUIST, District Judge,
dissenting:
I respectfully dissent from the Court’s opinion. I agree with the district court that Officer Rogers and Sgt. Stender lacked arguable probable cause to arrest Poulakis for violating Florida’s concealed weapons law. I would reverse, however, because in my judgment the district court erred in concluding that advice of counsel could transform a patently unreasonable arrest into a reasonable one.
My principal disagreement with the majority’s analysis is that it treats arguable probable cause as part of the clearly established prong of the qualified immunity analysis, when both Eleventh Circuit precedent and reason show that whether a federal constitutional right was clearly established is distinct from whether a police officer was objectively reasonable in making an arrest. Because, in my judgment, arguable probable cause is properly considered under the first step of the qualified immunity analysis, or at least separately from whether the law was clearly established, we may consider state intermediate appellate decisions construing the pertinent state statute. I also believe that there is no ambiguity in the statutory definition of “securely encased.”
I.
In concluding that Defendants lacked arguable probable cause, the district court relied upon several Florida appellate decisions that considered whether a firearm or other weapon contained in a closed center console is “securely encased,” and thus not a “concealed weapon” within the meaning of Fla. Stat. § 790.25(5). Those decisions held unequivocally that a firearm within a center console is “securely encased.” No relevant Florida decision even suggests otherwise. The majority sidesteps these decisions, however, by invoking this circuit’s rule that “decisions of the United States Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state ... can clearly establish the law,” McClish v. Nugent, 483 F.3d 1231, 1237 (11th Cir. 2007).[1]
*535 We may consider intermediate state court decisions in a qualified immunity analysis if arguable probable cause — -this Court’s test for determining whether an arrest without probable cause was objectively reasonable — is part of the first, rather than the second, step of the qualified immunity analysis. If, as the majority writes, arguable probable cause is merely a substitute for the “clearly established” prong in wrongful arrest cases, then the rule expressed in McClish, supra, and many other cases from this Court would control. Some Eleventh Circuit cases do suggest that arguable probable cause is part of the clearly established prong. See, e.g., Case v. Eslinger, 555 F.3d 1317, 1327 (11th Cir.2009) (“Absent evidence that a constitutional violation occurred, we need not consider whether the alleged violation was clearly established; that is, we need not consider whether Officer Davis lacked even arguable probable cause.”). Other cases refer to probable cause and arguable probable cause as merely different standards in the qualified immunity analysis. Knight v. Jacobson, 300 F.3d 1272, 1274 (11th Cir.2002) (“An officer sued for having made an arrest without probable cause is entitled to qualified immunity if there was arguable probable cause for the arrest, which is a more lenient standard than actual probable cause.”); Montoute v. Carr, 114 F.3d 181, 184 (11th Cir.1997) (“In order to be entitled to qualified immunity from a Fourth Amendment claim, an officer need not have actual probable cause but only ‘arguable probable cause,’ i.e., the facts and circumstances must be such that the officer reasonably could have believed that probable cause existed.”).
I believe that Skop v. City of Atlanta, 485 F.3d 1130 (11th Cir.2007), exemplifies the proper analysis. The Sloop court regarded arguable probable cause as part of the constitutional violation prong of the analysis. The court wrote: “Whether an arresting officer possesses probable cause or arguable probable cause naturally depends on the elements of the alleged crime and the operative fact pattern.” Id. at 1137-38 (citation omitted). To determine whether there was arguable probable cause, the court considered the elements of the Georgia statute prohibiting obstructing a police officer as well as decisions from the Georgia Court of Appeals construing the statute. Id. at 1138. The court concluded that the defendant officer lacked both probable cause and arguable probable cause to arrest the plaintiff. Id. at 1140, 1143. At the second step, whether the law was clearly established, the court wrote that the right at issue was whether “an arrest made without arguable probable cause violates the Fourth Amendment’s prohibition on unreasonable searches and seizures.” Id. The Sloop court clearly regarded arguable probable cause as part of the constitutional violation inquiry rather than the clearly established inquiry. Id. at 1144.
Sloop is legally indistinguishable, and the same analysis applies to this case. Shop reveals that the majority’s observation “that no decision from the United States Supreme Court, this Court, or the Florida Supreme Court has clearly established *536 that a firearm found in a center console of a vehicle is ‘securely encased’ for the purposes of Florida’s penal code, Fla. Stat. § 790.25(5),” is irrelevant. Shop framed the issue as whether an arrest made without arguable probable cause violates the Fourth Amendment. That right is clearly established. The Shop court did not consider whether Shop’s conduct violated the Georgia obstructing statute as part of the clearly established prong.
Davis v. Williams, 451 F.3d 759 (11th Cir.2006), like Slcop, considered intermediate state appellate court decisions in its arguable probable cause analysis. Davis involved Florida statutes prohibiting obstruction of justice and disorderly conduct. Citing three appellate decisions, the court observed that “Florida courts have generally held, with very limited exceptions, that physical conduct must accompany offensive words to support a conviction under § 843.02.” Id. at 765. In fact, the Davis court cited only Florida appellate decisions in its arguable probable cause analysis. The majority acknowledges Davis, but argues that the Davis court was really looking at Florida appellate decisions to determine whether there was probable cause to arrest, not to determine whether the law was “clearly established.” This is only partially correct. It is clear that Davis regarded intermediate appellate decisions as relevant to its determination of whether there was arguable probable cause. See id. at 764. Davis and Shop both considered the right at issue — to be free from an arrest without arguable probable cause— as clearly established without further considering the state statute in the clearly established analysis.
Shop and Davis are consistent with other decisions in which this Court considered intermediate state appellate court decisions as authoritative on state law issues critical to the qualified immunity analysis. See Case, 555 F.3d at 1328 (citing Dial v. State, 798 So.2d 880, 883 (Fla.Dist.Ct.App. 2001), for the proposition that Florida law requires independent corroboration of information supplied by an informant who has an interest in the investigation to support probable cause); Gold v. City of Miami, 121 F.3d 1442, 1446 (11th Cir.1997) (noting that “[t]he fact-intensive nature of the constitutional inquiry accounts for the varying views in the Florida appellate courts of what constitutes legally proscribed disorderly conduct” and concluding that the defendant officers had arguable probable cause).[2]
When a state law is at issue within the larger context of arguable probable cause in a Fourth Amendment claim, it makes good sense for a federal court to consider what all courts of that state have to say about that law, just as the police officers, prosecutors, and judges of that state must do. After all, arguable probable cause considers “whether ‘reasonable officers in the same circumstances and possessing the same knowledge as Defendants could have believed that probable cause existed to arrest Plaintiff,’ ” Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004) (quoting Von Stein v. Brescher, 904 F.2d 572, 579 (11th Cir.1990)) (italics added), and “since a reasonably competent public official should know the law governing his conduct,” Harlow v. Fitzgerald, 457 U.S. 800, 819, 102 S.Ct. 2727, 2738, 73 *537 L.Ed.2d 396 (1982), our focus should be upon what reasonable police officers of the state would have known about that state’s laws, including the judicial interpretations by which they are bound. Because I believe that our precedent reveals that arguable probable cause is part of the first, rather than the second, prong of the qualified immunity analysis, I see no principled basis for ignoring pertinent Florida appellate decisions.
The cases the majority cites all applied the rule in determining the scope of the federal constitutional right at issue, see, e.g., McClish, 483 F.3d at 1237 (applying the rule in the context of whether the federal constitutional right at issue was clearly established); Jenkins by Hall v. Talladega City Bd. of Educ., 115 F.3d 821, 827 n. 4 (11th Cir.1997) (discussing whether United States v. Lanier, 520 U.S. 259, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997), addressed the extent to which previous decisions of lower courts “may be considered in deciding whether a constitutional right has clearly been established”); none involved interpretation of a state statute, qua statute. In fact, Courson v. McMillian, 939 F.2d 1479 (11th Cir.1991), which appears to be the first decision by this Court to have recognized decisions of the highest court of the pertinent state as a source of authority that can clearly establish the law in this circuit, refers to decisions “addressing] a federal constitutional issue that has not been addressed by the United States Supreme Court or the Eleventh Circuit.” Id. at 1498 n. 32 (italics added). None of the Florida appellate cases the majority eschews addressed a federal constitutional issue. Accepting the majority’s reasoning, then, even a decision from the Florida Supreme Court itself— the final expositor of Florida law — holding that a firearm found in a center console of a vehicle is “securely encased” under Fla. Stat. § 790.25(5) could not “clearly establish” the law pursuant to Courson because it would not involve a federal constitutional issue.
At the time of Poulakis’ arrest, Florida cases decided years and even decades earlier held that a weapon in a center console of a vehicle is “securely encased” and thus not “concealed” in violation of Fla. Stat. § 790.01(1), (3). For example, in Dixon v. State, 831 So.2d 775 (Fla.Dist.Ct.App. 2002), the court reversed the defendant’s conviction for carrying a switch-blade knife in the center console of his vehicle. The court found the case “on all fours” with Bell v. State, 636 So.2d 80 (Fla.Dist.Ct. App.1994), which held that a gun found in a closed center console of a vehicle was securely encased. Id. at 776. The Bell court explained that “Bell’s revolver was securely encased by the very definition of that term as it was in a closed console that requires the opening of a lid for access.” Bell, 636 So.2d at 81. Similarly, State v. Gomez, 508 So.2d 784 (Fla.Dist.Ct.App. 1987), held that a sheathed knife within a closed center console was securely encased and not readily accessible for immediate use.
In light of Dixon, Bell, and Gomez, no reasonable police officer in Defendants’ position could have believed that probable cause existed. These decisions addressed factual situations identical to the one in this case. The majority speaks of a pattern of confusion over the meaning and application of § 790.25(5) arising from litigation that has “swirled about in the lower Florida courts.” The simple fact is that since Florida amended its gun law in 1982 to include the private conveyance exception and the definition of “securely encased” set forth in § 790.25(5), every single court confronted with the issue has held that a weapon in a center console is securely encased. Whether a firearm hanging from a dashboard in a snapped closed *538 plastic pouch with a flap is “securely encased,” or whether a trunk or a vanity pouch with a cover qualify as boxes or containers under the statute, are interesting questions, but irrelevant to the issue before us of whether a center console is a box or a container which requires a lid or cover to be opened for access.
II.
Even accepting the majority’s argument that arguable probable cause is determined as part of the clearly established inquiry, I would reach the same conclusion based solely upon the plain language of the statute; no reasonable interpretation of the “securely encased” exception supports Defendants’ arrest of Poulakis. “[C]on-duct may be clearly established as illegal through explicit statutory or constitutional statements.” Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1208-09 (11th Cir.2007) (citing Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir.2002)). That is, a closed center console of a vehicle is plainly a “container which requires a lid or cover to be opened for access.” According to the Random House Dictionary, a container is “anything that contains or can contain something, as a carton, box, crate, or can.” Random House Dictionary of the English Language 438 (2d ed.1987). Similarly, the online Oxford English Dictionary defines a container as “that which contains, esp. a receptacle designed to contain or store certain articles.” Oxford English Dictionary (2d ed.1989). A center console, which is designed to contain something and has a lid, is undoubtedly a container within the meaning of the statute. There is no ambiguity.[3] Likewise, a center console is a box, which is defined as “a container, case, or receptacle, usually rectangular, of wood, metal, cardboard, etc., and often with a lid or removable cover.” Random House Dictionary of the English Language 249 (2d ed.1987). In short, the statute is sufficiently clear to notify Defendants that they lacked probable cause to arrest Poulakis for a carrying a concealed firearm.
The majority cites three grounds for concluding that the text of the statute did not provide clear guidance to Defendants in this case. None of those grounds withstands scrutiny.
First, the majority notes that the statutory definition of “securely encased” does not explicitly refer to a center console, while it does refer to a “glove compartment.” It reasons that a center console is “strongly analogous” to a glove compartment because both are generally fixed components of a vehicle used for storage, then purports to apply the principle of statutory construction that the mention of one thing implies the exclusion or another, or expressio unius est exclusio alterius, to find ambiguity based upon this omission. But the majority fails to heed the rule of “great caution” in applying this principle. United States v. Castro, 837 F.2d 441, 443 n. 2 (11th Cir.1988) (quoting 73 Am.Jur.2d Statutes § 212, at 405-06).
The primary flaw in this analysis is the conclusion that the statute describes specific locations. It does not. Rather, it describes things or items. While a glove compartment is a location as well as a thing, because it is attached and nonmova-ble, none of the other items described is attached to a vehicle; are all very movable, and thus, cannot reasonably be considered locations. In fact, nothing in the statute suggests that the Florida legislature was *539 concerned with locations within an automobile. To the contrary, the concern was accessibility. The private conveyance exception applies only “if the firearm or other weapon is securely encased or is not otherwise readily accessible for immediate use.” Fla. Stat. § 790.25(5). “Securely encased” means “in a glove compartment, whether or not locked, snapped in a holster; in a gun case, whether or not locked; in a zippered gun case; or in a closed box or container which requires a lid or cover to be opened for access.” Fla. Stat. § 790.001(17). The point of each of these items is to preclude immediate access by requiring an intermediate step — opening a lid or cover; unsnapping a holster; or unzipping a gun case. Because a holster or a box or container with a lid can be easily placed within the driver’s reach on the floor, on the seat between the driver’s legs, or on the seat next to the driver, location has no bearing on whether a weapon is securely encased.
Since “securely encased” refers to things and not locations, the failure to mention a center console creates no ambiguity at all. The definition lists four specific items — a glove compartment, a holster, a gun ease, and a zippered gun case, each of which is either a box, a container, or both and requires some act to obtain access. It also includes, however, two broadly-descriptive items — a box or container with a lid or cover that must be opened for access — as a catch-all that would cover a host of items not mentioned in the definition. As set forth above, a center console is both a box and a container with a lid and is thus within the definition of “securely encased,” even though it is not specifically mentioned.
Second, the majority writes that it is unclear how the legislature intended to define the term “a closed box or container which requires a lid or cover to be opened for access,” but it fails to explain why this is so. The majority simply ignores the well-known rule of statutory construction that “[wjhere a statute does not define a term, we must give words their common and ordinary meaning, absent some established technical definition, unless the legislature intended otherwise.” Konikov v. Orange County, 410 F.3d 1317, 1329 (11th Cir.2005). Nothing in the statute suggests that the Florida legislature intended anything other than the common and ordinary meanings of the words “box” and “container,” both of which describe a center console. Instead of identifying and applying the proper rule, the majority imports its own limitation of “portability” into the definition, even though we are prohibited from doing so. Friends of Everglades v. S. Fla. Water Mgm’t Dist., 570 F.3d 1210, 1223 (11th Cir.2009) (“But we are not allowed to add or subtract words from a statute; we cannot rewrite it.”). It is irrelevant that some boxes or containers are portable. Other boxes are fixed and not portable, such as mailboxes, penalty boxes in hockey, or electrical boxes, but they are still boxes. Moreover, the statute itself refutes the “portability” argument, because it includes both a box and/or container that is portable, i.e., a gun case, and a box and/or container that is not portable, i.e., a glove compartment.
Finally, the majority says that the continued pattern of litigation contributes to the lack clarity in the term box or container. I submit that the language, rather than frequency of litigation, is the usual measure of a statute’s clarity. It is thus irrelevant whether cases continue to litigate the “securely encased” exception. Given the breadth of the terms “box” and “container,” the kinds of items that are arguably a box or a container are virtually limitless. But as already mentioned, every court that has considered the issue has concluded that a center console is a “box” *540 or a “container” within the statute. Thus, at least where a center console is involved, there is no confusion about whether it is “securely encased.”
III.
Having concluded that the statute lacks the clarity required to put Defendants on notice that they lacked arguable probable cause to arrest Poulakis, the majority finds that Defendants’ reliance on the advice of an unknown Assistant State Attorney is an additional consideration establishing arguable probable cause in this case. I agree with the general proposition that where qualified immunity presents a close question, a police officer’s reliance on the advice of counsel may be an appropriate factor in determining whether the officer’s conduct was objectively reasonable. My disagreement, as explained above, is that this is not a situation in which the facts fell “on the hazy border between clear and ambiguous,” given several prior Florida appellate opinions addressing the exact circumstances at issue in this case and a statute that is clear in its application to these circumstances. Thus, the district court’s error was concluding that reliance on advice of counsel could render Defendants’ conduct reasonable after it had already concluded that Defendants lacked arguable probable cause, or an objectively reasonable basis, to arrest Poulakis. In other words, it allowed “a waive of the prosecutor’s wand [to] magically transform an unreasonable probable cause determination into a reasonable one.” Cox v. Hainey, 391 F.3d 25 (1st Cir.2004).
My larger concern is that this Court’s decision sends a signal to police officers that they are free to ignore the law of the intermediate state appellate courts by which they are otherwise bound, and an unambiguous statute, without concern for violating an individual’s federal constitutional rights. Therefore, I would reverse on qualified immunity and remand for consideration of the other defenses Defendants raised in their summary judgment motion.

. Some recent decisions from this Court have adopted a more expansive list of authority *535 that may clearly establish the law. See Danley v. Allen, 540 F.3d 1298, 1313 (11th Cir. 2008) (stating that among other sources, “a legal principle announced by a decision from a court with jurisdiction over the place where the violation of rights was committed” may serve to notify a public official that his actions will violate a constitutional right); Goebert v. Lee County, 510 F.3d 1312, 1330 (11th Cir. 2007) (recognizing "factually similar cases already decided by state and federal courts in the relevant jurisdiction” as "sources of law that would put a government official on notice of statutory or constitutional rights”) (citing Hope v. Pelzer, 536 U.S. 730, 739, 122 S.Ct. 2508, 2515, 153 L.Ed.2d 666 (2002)).

. Several unpublished decisions from this Court also followed this approach. See Killmon v. City of Miami, 199 Fed.Appx. 796, 799-800 (11th Cir.2006) (citing Florida appellate decisions construing Florida's "fellow-officer" rule, Fla. Stat. Ann. § 901.18); Migut v. Flynn, 131 Fed.Appx. 262 (11th Cir.2005) (citing Florida appellate decisions in analysis of whether the defendant had arguable probable cause to arrest the plaintiff for intercepting an oral communication in violation of Fla. Stat. § 934.03(l)(a)).

. I cannot imagine why the Florida Supreme Court would even bother to construe the statute in light of the consistent opinions of Florida intermediate courts plus the unambiguous statutory language.