[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-11877

Non-Argument Calendar

_____

JAMIE SENKO,
an individual,

Plaintiff-Appellant,

*versus*

COREY J. JACKSON,
Individually,
DANIELLA MORENO,
Individually,
CITY OF MIAMI BEACH,
a municipal corporation,

Defendants-Appellees,

CITY OF NORTH MIAMI, FLORIDA,

Defendant.

———————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:20-cv-61845-AHS

———————————————

Before WILSON, LUCK, and BLACK, Circuit Judges.

PER CURIAM:

Jamie Senko appeals the district court's grant of summary judgment to Miami Beach Police Department (MBPD) Officers Corey Jackson and Daniella Moreno in Senko's 42 U.S.C. § 1983 case alleging excessive force, as well as false imprisonment and battery

under state law.[1]  After review,[2] we affirm the district court's grant of summary judgment.

## I.  BACKGROUND[3]

This case arises from events occurring early in the morning outside a Whole Foods supermarket in the City of Miami Beach on December 10, 2019, which were captured on the officers' body worn cameras (BWC). MBPD Officer Melissa Rosa observed a

---

[1] Senko abandoned any argument regarding the district court's grant of summary judgment to the City of Miami Beach for *respondeat superior* liability by failing to argue the issue in his initial brief.  *See Sapuppo v. Allstate Floridian Ins.*, 739 F.3d 678, 681 (11th Cir. 2014) (explaining a party abandons a claim by failing to adequately brief it or making only passing references to the claim in the statement of the case).

[2] We review the district court's grant of summary judgment *de novo*.  *Christmas v. Harris Cnty., Ga.*, 51 F.4th 1348, 1353 (11th Cir. 2022).

[3] When reviewing the district court's grant of summary judgment, we construe the facts in the light most favorable to Senko.  *See Christmas*, 51 F.4th at 1353.  However, as the district court noted, Senko disputed many of the facts listed in the Defendants' Statement of Undisputed Facts, but did not cite record evidence refuting them.  Similarly, in this court, while Senko provides record citations for some of his Statement of Facts, many sentences have no citation.  Like the district court, we "will not expend valuable judicial resources searching for resolution of such purported factual disputes."  Thus, the background section cites only the facts relevant to the disposition of this case, most of which are available on the body worn cameras of the officers involved.  *See Scott v. Harris*, 550 U.S. 372, 378-81 (2007) (holding when there is video capturing the events in question, a court may rely on the video evidence rather than crediting the non-moving party's version of the facts if those facts are contradicted by video evidence).

Toyota Camry stopped in a traffic lane in Miami Beach. Officer Rosa's BWC video shows she parked her patrol vehicle behind the Camry with her emergency lights, headlights, and overhead takedown lights illuminating the Camry. The Camry's brake lights were on and its engine was running.

Officer Rosa exited her vehicle and approached the driver's side door of the Camry and observed Senko asleep in the driver's seat with his head leaning against the driver's window. Officer Rosa assumed Senko's foot was on the brake because the Camry's brake lights were on. Officer Rosa radioed her observation of the Camry over police radio, calling in a description of the vehicle and requesting backup to assist her on the stop.

Several horn honks can be heard on Officer Rosa's BWC video while she was waiting for backup, but Senko did not react. Officer Moreno arrived as backup at the scene and asked Officer Rosa, "You ready?" before beginning their approach of the Camry. As Officers Rosa and Moreno were preparing to approach the Camry, Officer Jackson also arrived at the scene in response to Officer Rosa's request for backup. Officer Moreno approached the driver side door of the Camry while Officer Rosa approached the passenger side. Officer Rosa asked Officer Moreno, "Is he okay?" as she wiped condensation from the passenger window. Officer Moreno then noticed the logo on Senko's shirt and observed, "Oh, he works here! He works here, hold on," while shining a flashlight through the driver's side window.

Officer Rosa opened the passenger door while Officer Moreno opened the driver's door. When Officer Moreno opened the driver's door, she found Senko slightly slumped over, as though he had been leaning against the driver's side window. Officers Rosa and Moreno were able to open both doors all the way open before Senko reacted. Senko then placed his left hand on the steering wheel and appeared disoriented.

Officer Jackson exited his patrol vehicle and approached the Camry. Officer Jackson first approached the Camry on the passenger side towards Officer Rosa, then he quickly moved to the driver's side of the Camry next to Officer Moreno.

As Officers Rosa and Moreno were attempting to secure the Camry, it began to roll forward slowly. Senko did not comply with the officers' instructions to stop the car, and Officer Jackson moved past Officer Moreno, reached into the Camry, and put its gear shift into park. Officer Jackson then grabbed Senko's left hand from the Camry's steering wheel while repeatedly issuing verbal commands for Senko to get out of the car.

Despite being commanded over twenty times, Senko did not comply with the MBPD's orders to get out of the car. Officer Jackson then attempted to pull Senko from the Camry by his left arm but was unsuccessful as Senko was physically non-compliant, shifting away from the officers. Officer Moreno attempted to assist Officer Jackson by reaching for Senko's right arm while the officers kept repeating their instructions for Senko to get out of the car. With the Camry still running and the car in park, Officer Jackson

grabbed Senko by the ankles and pulled him from the driver's seat and away from the car.[4]  Less than a minute had passed since Officer Moreno first opened the driver's side door.

Once Senko was removed from the vehicle, Officer Moreno, Officer Jackson, and MBPD Officer Leon Azicri rolled Senko onto his stomach and handcuffed him with his hands behind his back. While Senko was handcuffed on the ground, Officer Rosa conducted a pat-down search and asked, "What the hell is wrong with you man?  What are you on?"  Senko responded, "What do you mean?"  While conducting the search, Officer Moreno warned Senko not to move, at which point Senko stated, "I'm not trying to cause a problem."  The MBPD officers then moved Senko into a seated position on the ground while they investigated.

While handcuffed on the ground, Senko was interviewed by the MBPD officers to determine why he was disoriented and passed out in the running Camry in the street.  Senko responded that he was coming to his job at Whole Foods from his house, and that he did not understand what happened.  Later, while being interviewed by Officer Rosa in her patrol vehicle, Senko explained when he first pulled up to Whole Foods there was a truck reversing into the parking lot, and that while Senko was waiting for the truck, he took a

_____

[4] Senko asserts Officer Jackson dragged him across the road, lifted him high off the ground, and threw him down.  This is not shown by the video.  The video shows Officer Jackson dragging Senko a short distance out of the car, and then Senko is rolled onto his stomach.

nap and passed out. Senko expressed that he did not hear the officers telling him to get out of the car until they pulled him out on the ground. Senko was examined by Miami Beach Fire Department personnel. Fire Department personnel advised the MBPD officers on scene that Senko was most likely experiencing medical issues due to high blood pressure and sleep deprivation. Following the medical evaluation, the MBPD officers made the decision to release Senko from custody.

## II.  DISCUSSION

### A.  Excessive Force

Qualified immunity protects government officials performing discretionary functions from trials and liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.[5] *Ireland v. Prummell*, 53 F.4th 1274, 1297 (11th Cir. 2022). "[A] government official is entitled to qualified immunity unless he (1) violated a constitutional right, and (2) that constitutional right was clearly established at the time." *Id.* (quotation marks omitted).

Claims that law enforcement officials used excessive force while making an arrest, investigatory stop, or other seizure of a person are analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388

---

[5] The parties do not dispute that Officers Moreno and Jackson were acting under their discretionary authority.

(1989).  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* at 396.

> Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment.  The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Id.* at 396-97 (quotation marks and citation omitted).  "Use of excessive force is an area of the law in which the result depends very much on the facts of each case." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (quotation marks omitted).

The district court did not err in granting qualified immunity to Officers Moreno and Jackson on Senko's excessive force claims.  Senko asks the Court to make inferences that are not supported by the video evidence.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("[F]acts must be viewed in the light most favorable to the non-moving party only if there is a 'genuine' dispute as to those facts.").  He asserts the district court disregarded inferences that could be drawn from the facts that the officers knew he was disoriented and lacked situational awareness and that the officers themselves created the exigent circumstances by opening the car doors rather than knocking on the car's window.  But Senko asks this Court to use 20/20 hindsight with the officers' actions rather than the

perspective of a reasonable officer on the scene.  *See Graham*, 490 U.S. at 396.

The facts as shown on video are that an officer came upon a car stopped in the lane of traffic with brake lights on.  Officers observed Senko passed out in the driver's seat of the car.  When officers opened the doors of Senko's car, Senko, admittedly disoriented, took his foot off the brake instead of complying with the officers' commands, and the car began moving forward.  Officer Jackson had to put the car in park to stop it.  Then, despite being asked over twenty times, Senko did not comply with the MBPD's orders to get out of the car.  Officer Jackson attempted to pull Senko from the Camry by his arm, but Senko was physically non-compliant.  So Officer Jackson grabbed Senko by the ankles and pulled him from the driver's seat.  Once Senko was away from the Camry, officers rolled Senko onto his stomach and handcuffed him with his hands behind his back.

"Not every push or shove" violates the Fourth Amendment. *Graham*, 490 U.S. at 396.  Senko was not complying with officers' demands and the officers' use of force to remove Senko from the vehicle and effectuate his arrest was not excessive.  *See id.* (stating "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it").  The district court did not err in granting summary judgment on this issue.

## B. *False Arrest/Imprisonment*

"[U]nder Florida law, false arrest and false imprisonment are different labels for the same cause of action." *Rankin v. Evans*, 133 F.3d 1425, 1430 n.5 (11th Cir. 1998) (quotation marks omitted). The tort of false arrest requires proof of (1) "the unlawful detention and deprivation of liberty of a person," (2) "against that person's will," (3) "without legal authority or color of authority," and (4) "which is unreasonable and unwarranted under the circumstances." *Florez v. Broward Sheriff's Ofc.*, 270 So. 3d 417, 421 (Fla. 4th DCA 2019). "The existence of probable cause constitutes an affirmative defense to the claims of false arrest and imprisonment under Florida law." *Rankin*, 133 F.3d at 1436. "[I]f there is a valid charge for which a person could have been arrested, probable cause exists." *Daniel v. Village of Royal Palm Beach*, 889 So. 2d 988, 991 (Fla. 4th DCA 2004).

Section 316.072(3), Florida Statutes provides it is a misdemeanor "for any person willfully to fail or refuse to comply with any lawful order or direction of any law enforcement officer." Section 843.02, Florida Statutes provides it is a misdemeanor to obstruct a police officer in the lawful execution of a duty. Although Senko was not ultimately charged, the officers had probable cause to arrest Senko for violation of both statutes.[6] Senko failed to

---

[6] Officers Moreno and Jackson also contend probable cause existed to detain and arrest Senko for driving under the influence in violation of section 316.193(1)(a), Florida Statutes. Because the violations of the other statutes are sufficient to assert the affirmative defense of probable cause, we do not address

comply with orders to stop the car when it began moving, and then refused to exit his vehicle despite over twenty verbal orders to do so.  Because officers had probable cause to arrest Senko for violations of these statutes, the district court did not err in granting summary judgment to the officers as Senko's false arrest claim fails as a matter of law.  *See Rankin*, 133 F.3d at 1436.

## C.  Battery

Under Florida law, force used by police officers during an arrest is transformed into a battery only where the force used was clearly excessive.  *See Davis v. Williams*, 451 F.3d 759, 768 (11th Cir. 2006).  To determine whether the force used was excessive, Florida courts analyze whether the amount of force used was reasonable under the circumstances.  *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. 3d DCA 1996).  As we concluded the officers did not use excessive force in securing Senko, we likewise affirm the district court's grant of summary judgment to Officers Moreno and Jackson on Senko's state law battery claims.

## III.  CONCLUSION

Accordingly, we affirm the district court's grant of summary judgment in favor of Officer Moreno, Officer Jackson, and the City of Miami Beach.

**AFFIRMED.**

---

the parties' arguments regarding probable cause for driving under the influence.