[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 3, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-11094
Non-Argument Calendar

_____

D. C. Docket No. 03-61977-CV-JAL

QUINTON HAWTHORNE,

                                                    Plaintiff-Appellant,

                        versus

SHERIFF OF BROWARD COUNTY,
Ken Jenne,

                                                    Defendant,

BERNARD BROWN,
WILLIE DOWE,

                                                    Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(January 3, 2007)**

Before TJOFLAT, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

Quinton Hawthorne, a Florida state prisoner proceeding pro se, appeals the district court's grant of summary judgment to Broward County Sheriff's Deputies Bernard Brown and Willie Dowe (the "Officers") on his 42 U.S.C. § 1983 claim alleging that the officers violated his rights under the Fourth Amendment. For the reasons that follow, we affirm.

## I. Background

The facts in the light most favorable to Hawthorne are as follows.[1] On July 26, 2002, Officers Brown and Dowe went to the home of Hawthorne's father to question Hawthorne about a burglary. Upon the Officers' arrival, they told Hawthorne, who was outside the residence, that they wanted to question him about his possible involvement in a burglary and that they wished to take him to the station for questioning. In response, Hawthorne became belligerent and verbally abusive, telling the Officers that he had nothing to say unless they had an arrest warrant. As the Officers continued their attempts to question Hawthorne, at some

---

[1] As discussed below, in reviewing a motion for summary judgment, we construe the facts in the light most favorable to the non-moving party. Wood v. Kesler, 323 F.3d 872, 875 n.1 (11th Cir. 2003).

point, a struggle ensued.[2]  During the struggle, Hawthorne grasped onto the hood of the Officers' vehicle in order to resist their efforts to restrain him.  As the struggle continued, Hawthorne bit into Officer Dowe's arm.  After Hawthorne ignored the Officers' orders to stop biting Dowe's arm, Officer Brown struck Hawthorne in the face in an effort to stop the biting.  Ultimately, the Officers were forced used pepper spray to subdue Hawthorne long enough to place him in handcuffs.  Hawthorne continued to kick and thrash about after he was handcuffed, and after he was placed inside another deputy's vehicle, he kicked out a window.  In her deposition, Hawthorne's wife testified that just minutes before the Officers' arrival, Hawthorne had drank several beers and snorted two bags of cocaine.

Hawthorne was charged with battery on a law enforcement officer, aggravated battery on a law enforcement officer, and resisting a law enforcement officer with violence.  He pleaded no contest to, and was convicted of, all three charges.  While in pretrial detention, Hawthorne filed a complaint under 42 U.S.C. § 1983 against Officers Brown and Dowe[3] in their individual capacities, alleging that they had arrested him without probable cause, made false statements, and used

---

[2] Officers Brown and Dowe assert that at this point, Hawthorne pushed Officer Brown in the chest.  Hawthorne, however, denies ever pushing or striking Officer Brown.

[3] In his original complaint, Hawthorne also named Sheriff Ken Jenne as a defendant.  The district court, however, dismissed the complaint as to Jenne pursuant to 28 U.S.C. § 1915(2)(2)(b)(ii) for failure to state a claim upon which relief could be granted.

excessive force to effectuate his arrest.

The Officers moved to dismiss or, in the alternative, for a more definite statement, and Hawthorne responded by elaborating on his claims. The magistrate judge construed Hawthorne's response as an amended complaint alleging that the Officers violated Hawthorne's Fourth Amendment rights by: (1) arresting him without either a warrant or probable cause; (2) falsely stating that he committed the offenses for which he was convicted to support the charges against him and cover up their brutality; and (3) using excessive force to effectuate his arrest.

Following discovery, the Officers filed motions for summary judgment and to dismiss, to which Hawthorne filed a response. The magistrate judge entered a 12-page report outlining the history of the litigation, the facts, and the controlling law, and recommending that summary judgment be granted to the Officers. After reviewing the record, the magistrate's report, and Hawthorne's objections, the district court adopted the report and granted summary judgment in favor of the Officers. Hawthorne timely filed this appeal.

## II. Discussion

We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the party opposing the motion. Cotton v. Cracker Barrel Old Country Store, Inc., 434 F.3d 1227, 1230 (11th Cir. 2006).

4

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "In determining whether an issue of fact is 'genuine' for the purpose of defeating summary judgment, we ask whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Hudgens v. Bell Helicopters/Textron, 328 F.3d 1329, 1344-45 (11th Cir. 2003) (citations omitted). Once the moving party meets its burden of showing the absence of a genuine issue of material fact, the burden shifts to the non-moving party to submit sufficient evidence to rebut the showing with affidavits or other relevant admissible evidence. Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991).

A. Arrest Without Probable Cause

First, we must resolve whether there is a genuine issue of material fact concerning whether Officers Brown and Dowe had probable cause to arrest Hawthorne. Hawthorne claims that probable cause could not have existed for his arrest because the Officers attempted to question him about a burglary without either a warrant or probable cause to suspect his involvement. This claim implicates the Fourth Amendment's guarantee against unreasonable searches and

5

seizures, which "encompasses the right to be free from arrest without probable cause." Crosby v. Monroe County, 394 F.3d 1328, 1332 (11th Cir. 2004). The district court (via its adoption of the magistrate's report) held that Hawthorne's false arrest claim was barred under Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), or, if not Heck-barred, was subject to summary disposition based on the Officers' entitlement to qualified immunity. We agree with the latter determination.

A government official sued for a constitutional violation under § 1983 may seek summary judgment on the ground that he is entitled to qualified immunity. Crosby, 394 F.3d at 1332. Qualified immunity protects from liability government officials sued in their individual capacities if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). To be eligible for qualified immunity, a government official first must show that he was performing a discretionary function at the time the alleged violation of federal law occurred. Crosby, 394 F.3d at 1332. Once the official has established that he was engaged in a discretionary function, the plaintiff bears the burden of demonstrating that the official is not entitled to qualified immunity by

6

showing (1) that the defendant has committed a constitutional violation and (2) that the constitutional right the defendant violated was "clearly established" at the time the violation occurred. Id. "In the context of a claim for false arrest, an officer is entitled to qualified immunity where that officer had 'arguable probable cause'" to effectuate the arrest. Davis v. Williams, 451 F.3d 759, 762-63 (11th Cir. 2006). Arguable probable cause exists where an objectively reasonable officer in the same circumstances and possessing the same knowledge as the officers effectuating the arrest could have believed that probable cause existed. See Thornton v. City of Macon, 132 F.3d 1395, 1399 (11th Cir. 1998).

Here, it is undisputed that the Officers were acting within the scope of their discretionary authority when they arrested Hawthorne. Moreover, it is undisputed that when the Officers attempted to take Hawthorne into custody, (1) he grasped the hood of the Officers' vehicle and would not let go; (2) he bit Officer Dowe on the arm and ignored the Officers' orders to stop; and (3) the Officers did not strike Hawthorne until he began biting Dowe. Based on these facts, a reasonable officer could have believed that arguable probable cause existed to arrest Hawthorne for the offenses with which he was charged—resisting a law enforcement officer with violence, battery, and aggravated battery on a law enforcement officer.[4]

---

[4] See Fla. Stat. Ann. §§ 784.03, 784.045, 784.07, 843.01.

Regardless of whether the Officers had a warrant or probable cause to arrest Hawthorne for the burglary when they initially approached him, Hawthorne's actions thereafter constituted an intervening set of events giving rise to (at least) arguable probable cause for his arrest. Thus, we conclude that Hawthorne has not shown a constitutional violation, and we need not proceed to the second question in the qualified immunity analysis (the "clearly established" inquiry). See Vinyard, 311 F.3d at 1346.

B. False Statements

Our next inquiry is whether there is a genuine issue of material fact concerning whether the Officers violated Hawthorne's Fourth Amendment rights by falsely stating in their police report that he had violently resisted and battered them in order justify the arrest and cover up their alleged brutality. The court below determined that this claim of false statements was barred under Heck because if Hawthorne were to prevail, this would necessarily imply the invalidity of his underlying convictions. We agree.

Under Heck, a state prisoner may not bring a claim for damages under § 1983 "if a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction." Heck, 512 U.S. at 487, 114 S.Ct. at 2372. Thus, unless the plaintiff-prisoner can demonstrate that the conviction or sentence has

8

already been invalidated, the complaint must be dismissed.  Id.  Here, Hawthorne contends that the Officers falsely stated that he committed the offenses for which he is now incarcerated.  To prevail on this claim, Hawthorne must necessarily establish that he *did not* commit the offenses for which he was convicted.  Hence, a judgment in Hawthorne's favor on this claim would necessarily imply the invalidity of his underlying convictions.  Because Hawthorne has not demonstrated that his convictions have already been invalidated, this claim is barred under Heck. See id. at 487, 114 S.Ct. at 2372.

C.  Excessive Force

We next turn to Hawthorne's claim that the Officers used excessive force to effectuate his arrest.  The court below held that the Officers were entitled to qualified immunity on this claim.  We agree.

The use of excessive force in carrying out an arrest constitutes a violation of the Fourth Amendment.  Graham v. Connor, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870-71, 104 L.Ed.2d 443 (1989).  Nonetheless, this court recognizes "that the typical arrest involves some force and injury."  Rodriguez v. Farrell, 280 F.3d 1341, 1351 (11th Cir. 2002).  In excessive force cases, an officer will be entitled to qualified immunity "if an objectively reasonable officer in the same situation could have believed that the force used was not excessive."  Vinyard, 311 F.3d at 1346.

9

"[T]he application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." Nolin v. Isbell, 207 F.3d 1253, 1257 (11th Cir. 2000).

Here, it is undisputed that when the Officers attempted to take Hawthorne into custody, (1) Hawthorne grasped onto the hood of the Officers' vehicle and would not let go; (2) he bit Officer Dowe and continued the biting despite orders to stop; (3) the Officers never struck Hawthorne until he bit Dowe; and (4) the Officers could not even handcuff Hawthorne until he was subdued with pepper spray, and even then, he continued to kick and thrash about. Although the Officers admit that Officer Brown struck Hawthorne in the face, nothing in the record corroborates Hawthorne's assertion that the Officers banged or slammed his head onto a police car. And in her deposition, Hawthorne's wife testified that Hawthorne had drank several beers and snorted cocaine shortly before the Officers arrived. Finally, Fire Rescue Captain John O'Berry, who interviewed and treated Hawthorne following his arrest, reported seeing no bruises, edema, or bleeding. On these facts, a reasonable officer could have believed that the force used during Hawthorne's arrest was not excessive. Accordingly, we conclude that the force used by the Officers to effectuate Hawthorne's arrest did not violate the Constitution.

10

### III. Conclusion

For the foregoing reasons, we **AFFIRM** the judgments of the district court.