**Vanessa PRICE–DAVIS, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**CASE NO. 14–62934–CIV–COHN**

United States District Court, S.D. Florida.

Signed September 28, 2015

claims to harass or cause unreasonable delay or needless increase the costs of litigation, etc.

**540**

Billie Tarnove, Fort Lauderdale, FL, for Appellant.

Valerie G. Preiss, United States Department of Justice, Washington, DC, for Appellee.

### OPINION AND ORDER AFFIRMING RULINGS OF BANKRUPTCY COURT

JAMES I. COHN, United States District Judge

**THIS CAUSE** is before the Court upon the Notice of Appeal [DE 1] filed by Vanessa Price–Davis. The Court has reviewed parties' briefs, the record in this case, and is otherwise advised in the premises. For the reasons discussed herein, the Court affirms each of the Bankruptcy Court's rulings at issue.

### I. BACKGROUND

This bankruptcy appeal arises from the Order Granting Defendant's Motion for Summary Judgment ("Order") entered on December 11, 2014, by the Honorable Raymond B. Ray. See DE 1. Appellant, Vanessa Price–Davis, filed a Chapter 7 bankruptcy petition on April 30, 2012, and the Bankruptcy Court entered a general discharge on January 1, 2013, releasing Appellant of all dischargeable debts. DE 9 at 5; DE 10 at 1. On March 15, 2013, the IRS filed a proof of claim against Appellant in the amount of $250,027 for income tax, penalties, and interest for the 2005 tax year. Adversary Complaint ¶ 5; Answer ¶ 5 [DE 4–2]. On May 21, 2014, after the IRS seized Appellant's refund, she filed an adversary proceeding to determine the dischargeability of her income-tax liability for tax year 2005. DE 10 at 1. Following discovery, Appellee, the United States, filed a motion for summary judgement ("Motion"), maintaining that Appellant's 2005 tax liability should not be discharged because Appellant had willfully evaded her obligation to pay. See DE 4–3. The Bankruptcy Court entered summary judgment in favor of the United States, and Price–Davis appealed. See DE 1.

Appellant is an emergency room physician who has two daughters with her now-estranged husband ("Mr. Davis"), a dentist living in New York. DE 1 at 2. In 2005, Appellant filed a joint tax return with her husband, and they received a $2,194 refund for overpayment. Id. However, on March 19, 2007, the IRS sent Appellant and Mr. Davis a Summary of Proposed Changes to their 2005 tax return, showing $25,498 due as a result of their failure to report all of Mr. Davis's income. Id. On September 8, 2008, following an audit of the 2005 tax return, the IRS assessed an additional $130,633 in taxes on unreported income from Mr. Davis's dental practice as well as penalties for late filing and failure to pay. Id. There is no evidence in the record of the date on which, or the address to which, the IRS sent the Notice of Assessment for $130,633. DE 11 at 6.

On July 3, 2008, Appellant signed a Power of Attorney and Declaration of Representative, authorizing three individuals to represent her before the IRS regarding her individual income taxes for 2004 through 2006. DE 1 at 3. Appellant maintains that she was not aware of the audit or that she owed any taxes to the IRS

when she signed the Power of Attorney. DE 9 at 8. By the spring of 2009, Appellant became aware of the audit, and on April 24, 2009, she submitted a Request for Innocent Spouse Relief, which was denied but never appealed. *Id.*; DE 1 at 3. The record does not contain an official record denying the Request for Innocent Spouse Relief, but Appellant testified that it was denied. DE 9 at 6.

In the Request for Innocent Spouse Relief, Appellant stated that she was not the victim of spousal abuse or domestic violence. DE 10 at 2 n.3. She now states that Mr. Davis abused her emotionally and physically, and notes that the Request for Innocent Spouse Relief was prepared by her husband's attorney. DE 9 at 8; DE 11 at 9.

Appellant has made no voluntary payments toward her tax debt. DE 10 at 2. She testified that she contacted the IRS to make payments, but the IRS advised her that it would not enter into a payment plan due to the size of her debt and instructed her to speak with a separate department. DE 11 at 7; DE 9 at 10. However, she did not enter into a formal repayment or installment plan with the IRS or make an offer to compromise the debt. DE 1 at 11. Appellant also paid nothing when she filed her income tax returns for 2009 and 2010, even though the returns reflected that she owed more than $45,000 for those two tax years. DE 1 at 3–4. According to Appellant, her adjusted gross income was $59,945 for 2008, $83,395 for 2009, $79,966 for 2010, $147,918 for 2011, and $265,377 for 2012. DE 11 at 8. Davis also reported $258,030 in wages on her 2013 personal income tax return. DE 10 at 6.

Since the spring of 2009, Appellant has continued to make large discretionary expenditures. In the fall of 2013, Davis purchased a $23,000 vehicle for her oldest daughter and pays to have the vehicle shipped between Florida and Connecticut, where her daughter attends a private university. DE 1 at 5; DE 9 at 9. In 2014, Appellant and her youngest daughter moved into a four-bedroom house with a pool, which Appellant pays $3,400 per month to rent, and Appellant pays $1,400 per month for her oldest daughter's apartment in Connecticut. DE 1 at 4, 10. Appellant pays $10,000 per year for her youngest daughter to attend a private high school and between $15,000 and $17,000 per year for her oldest daughter's college tuition. *Id.* at 5; DE 9 at 9. Additionally, she paid a total of $8,000 in 2009 and $12,000 in 2012 for her daughter's dance, voice, and music lessons, and she purchased several plane tickets from 2011 to 2013, along with related travel expenses. DE 1 at 5. Appellant estimates that her gifts to family in 2013 were at least $3,000. *Id.* From May 26 to June 27, 2012, Appellant's credit card expenditures were $7,058.45 for clothing, dance lessons, and entertainment, and in the spring of 2013 and 2014, her expenditures exceeded her bank deposits by approximately $1,211 and $4,366, respectively. *Id.* at 6.

On Appellee's motion for summary judgment, the Bankruptcy Court held that, based on the undisputed material facts, Appellant's 2005 tax obligations were not dischargeable under 11 U.S.C. § 523(a)(1)(C) because the Government had proved that (1) Appellant willfully engaged in conduct, either acts of commission or acts of omission, to avoid the payment or collection of taxes, and (2) she had a mental state of voluntarily and intentionally avoiding her duty to pay taxes. DE 1 at 8–12. Specifically, the Bankruptcy Court concluded that Appellant willfully attempted to evade or defeat her tax debts by choosing "to preserve her high standard of living with comforts financed, in large measure, with funds that she decided

she would not pay to the IRS." *Id.* at 8. Appellant responded by filing an initial brief and reply, requesting that the summary judgment be reversed and the case set for trial. *See* DE 9, 11. Appellee filed a response seeking affirmance of the summary judgement in all respects. *See* DE 10.

The Court now will turn to the substance of the arguments that the parties have raised in their briefs. Arguments not raised in the briefs are waived. *See, e.g., Bank of Am., N.A. v. Mukamai (In re Egidi)*, 571 F.3d 1156, 1163 (11th Cir. 2009).

## II. *JURISDICTION*

The federal district courts are courts of limited jurisdiction. *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir.2003). In appeals from the bankruptcy courts, a district court has jurisdiction to review three types of orders: (1) final orders; (2) interlocutory appeals relating to certain orders issued under 11 U.S.C. § 1121(d); and (3) other interlocutory orders, only by leave of the court. *Neidich v. Lorenzo (In re Lorenzo)*, No. 13–23100, 2014 WL 1877408 at *2 (S.D.Fla. May 9, 2014). In this appeal, the Bankruptcy Court's Order Granting Defendant's Motion for Summary Judgment constitutes a "final order" and is therefore properly before this Court.

## III. *LEGAL STANDARD*

A district court reviews a bankruptcy court's entry of summary judgment *de novo. In re Optical Techs., Inc.*, 246 F.3d 1332, 1335 (11th Cir.2001). A bankruptcy court and a district court must apply the same standard in deciding a summary judgment motion; that is, the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Optical Techs.*, 246 F.3d at 1334. The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To satisfy this burden, the movant must show the court that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548.

After the movant has met its burden under Rule 56(a), the burden of production shifts, and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). As Rule 56 explains, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact ... the court may ... grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed.R.Civ.P. 56(e)(3). Therefore, the non-moving party "may not rest upon the mere allegations or denials in its pleadings" but instead must present "specific facts showing that there is a genuine issue for trial." *Walker v. Darby*, 911 F.2d 1573, 1576–77 (11th Cir. 1990). In deciding a summary-judgment motion, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir.2006).

## IV. *DISCUSSION*

A debtor who files a petition under Chapter 7 of the Bankruptcy Code

is generally discharged from all debts that arose before the filing of the bankruptcy petition. *See* 11 U.S.C. § 727(b). This policy is intended to provide a "fresh start" to the "honest but unfortunate debtor," *In re Fretz*, 244 F.3d 1323, 1326 (11th Cir.2001), but not to assist those who, "despite their own misconduct, are attempting to preserve a comfortable standard of living at the expense of their creditors," *In re Zick*, 931 F.2d 1124, 1129 (6th Cir.1991). To preserve this policy objective, Congress created several exceptions to the general rule of discharge, and the Government bears the burden of proving by a preponderance of the evidence that an exception applies. *See In re Griffith*, 206 F.3d 1389, 1396 (11th Cir.2000)

▮ In this case, the exception at issue is 11 U.S.C. § 523(a)(1)(C), which renders tax debts non-dischargeable if the debtor "willfully attempted in any manner to evade or defeat such tax." The exception applies if: (1) the taxpayer "engaged in affirmative acts to avoid payment or collection of taxes, either through commission or omission" ("conduct element"); and (2) the conduct is done "voluntarily, consciously, or knowingly, and intentionally" ("mental state element"). *In re Jacobs*, 490 F.3d 913, 921 (11th Cir.2007). The Bankruptcy Court found both elements satisfied by the undisputed facts of this case, and this Court concurs for the following reasons.

**A. The Conduct Requirement**

▮ The Bankruptcy Court correctly determined that Appellant engaged in affirmative acts to avoid payment or collection of taxes. The conduct requirement is satisfied by a showing that the debtor engaged in acts of commission or culpable omission to avoid the payment of taxes. *Jacobs*, 490 F.3d at 921. Nonpayment of taxes alone is insufficient to satisfy the conduct element. *In re Mitchell*, 633 F.3d

1319, 1327 (11th Cir.2011). However, nonpayment in conjunction with a broad range of other activities may satisfy the conduct requirement. *See, e.g., Jacobs*, 490 F.3d at 920, 926 (finding conduct element satisfied where debtor failed to pay tax obligations and made many intra-family gifts, made large monetary transfers to wife's business, failed to properly report wage income, titled property in wife's name to frustrate tax collection, and engaged in "outrageously lavish spending"); *In re Sheehan*, No. 09–12005, 2010 WL 4499326 at *7 (Bankr.N.D.Ohio Oct. 29, 2010) (failed to pay tax obligations and constantly moved money out of checking account to avoid collection by IRS). Importantly, "large discretionary expenditures, when a taxpayer knows of his or her tax liabilities, is capable of meeting them, but does not, are relevant to § 523(a)(1)(C)'s conduct element." *Jacobs*, 490 F.3d at 926 (internal citation omitted).

▮ The undisputed facts in this case show that Appellant bought a new car, moved into a fancy house, paid for expensive dance and music lessons, traveled, sent her children to expensive private schools, and spent large amounts on retail and entertainment—all while aware of her 2005 tax obligations or on notice that those obligations may not have been discharged. Moreover, she failed to pay her 2009 and 2010 taxes, demonstrating a pattern of non-payment. By continuing to make many large non-essential purchases after notification of her substantial outstanding tax obligation and repeatedly failing to pay taxes, Appellant engaged in a conscious "attempt[ ] to preserve a comfortable standard of living at the expense of [her] creditors." *See Zick*, 931 F.2d at 1129.

Appellant contends that there are issues of fact regarding if and when she was notified of her additional $130,633 tax obligation, whether she was aware of the audit

in 2008 when she signed the Power of Attorney, and whether she believed her debt was discharged after filing for bankruptcy. DE 9 at 14; DE 11 at 5–6, 9. However, Appellant admits that by April 2009, when she filed her Request for Innocent Spouse Relief, she "knew of the tax liability." DE 9 at 14. Furthermore, there was only a period of approximately two-and-a-half months in which Appellant was unaware that her 2005 obligations may not have been discharged with the general discharge on January 1, 2013, since the IRS filed proof of claim on March 15, 2013. DE 9 at 5; DE 10 at 1; Adversary Complaint ¶ 5 [DE 4–2]; Answer ¶ 5 [DE 4–2]. At all other times from April 2009 onward, Appellant either knew that she had liability for the 2005 tax year or was on notice that the debt might not have been discharged. Nevertheless, she continued to make large discretionary expenditures.

■ The Bankruptcy Court also correctly found that Appellant had the ability to pay at least some of her tax debts. *See* DE 1 at 12. Appellant argues that there is an issue of material fact whether she earned sufficient income to pay off the total amount of taxes that she owed for 2005. DE 11 at 6. However, the issue is not whether she was capable of paying off *all* of her debt, but rather whether she prioritized paying at least *some* of her tax debts over non-essential expenditures. *See Jacobs*, 490 F.3d at 926. As the Bankruptcy Court for the Middle District of Florida aptly explained, "The law is clear that taxpayers who have the money to pay their taxes must do so first. Making discretionary expenditures instead of paying tax liabilities demonstrates a voluntary and intentional evasion that prevents the dischargeability of debt under § 523(a)(1)(C)." *In re Obinwa*, No. 6:11–BK–08951–KSJ, 2012 WL 5555715 at *5 (Bankr.M.D.Fla. Nov. 13, 2012). Appel-

lant had a total adjusted gross income of $576,656 from 2009 to 2012, when she clearly knew of her 2005 tax debt, *see* DE 11 at 2, and managed to pay for private school tuition, expensive music and dance classes, personal travel, and entertainment during that time. DE 1 at 5–6; DE 9 at 9. Thus, there is no doubt that Appellant had the ability to pay some of her tax debt.

The Court acknowledges that some of Appellant's expenditures in isolation do not seem lavish or extravagant. Paying for a child to participate in extracurricular activities or helping to pay for a child's college tuition are not inherently wasteful. However, the large size and quantity of Appellant's discretionary expenditures to maintain her previous standard of living, with full knowledge of her outstanding tax debt, amounts to avoidance of payment.

The Bankruptcy Court correctly considered Appellant's failure to pay her 2009 and 2010 income taxes in its assessment of the conduct requirement. Contrary to Appellant's contention, it is immaterial whether Appellant knew that taxes were not being withheld from her paychecks for the 2009 and 2010 tax years, because it is undisputed that Appellant filed tax returns showing that she still owed $24,937 and $21,564 for those periods. *See* DE 10 at 3; DE 11 at 7. Nevertheless, she chose not to pay. Similarly, that Appellant may have been entitled to a refund for certain tax years after 2005 does not affect the conclusion that failure to pay taxes in full for three years within a decade evidences a pattern of non-payment.

**B.  The Mental State Requirement**

■ The Court agrees with the Bankruptcy Court's conclusion that the mental state requirement was satisfied. For the Section 523(a)(1)(C) exception to apply, the Government must prove that "(1) the debtor had a duty under the law, (2) the debtor

knew [she] had that duty, and (3) the debtor voluntarily and intentionally violated that duty." *Jacobs*, 490 F.3d at 921 (citing *In re Griffith*, 206 F.3d 1389, 1396 (11th Cir.2000)). There is no dispute that Appellant had a duty under the law to pay her 2005 tax debts, as both parties to a joint tax return are jointly liable for additional taxes assessed on that return. *See* 26 U.S.C. § 6013(d)(3). Nor is there a dispute that Appellant knew of her duty. DE 9 at 18. Appellant only contests whether the third prong—voluntary and intentional violation—was satisfied. DE 9 at 18.

The third prong is intended to prevent application of the Section 523(a)(1)(C) exception to "debtors who make inadvertent mistakes." *Fretz*, 244 F.3d at 1330; *Mitchell*, 633 F.3d at 1327–28. It does not require a finding of fraudulent intent; rather, the court must consider the totality of the circumstances to determine if the debtor acted knowingly and deliberately in attempting to evade tax liabilities. *In re Hamm*, 356 B.R. 263, 284 (Bankr.S.D.Fla.2006). Maintaining a lavish lifestyle while knowingly failing to pay taxes is a circumstance the court may consider in determining the requisite mental state. *See Jacobs*, 490 F.3d at 926.

Applying this standard, the Bankruptcy Court was correct in finding that Appellant's "choice to use her financial resources in expensive discretionary spending was voluntary and intentional." *See* DE 1 at 11–12. By prioritizing the maintenance of her comfortable lifestyle and repeatedly failing to pay her income taxes, she knowingly and deliberately ignored her tax obligations. Renting a fancy house, buying a new car, and paying for expensive music and dance lessons with full knowledge of a large outstanding debt to the IRS, or at least while on notice that it had not been discharged, cannot be considered an "inadvertent mistake."

Although the Court is sympathetic to Appellant's claims of physical and emotional abuse by her estranged husband, they do not excuse her obligation to pay her 2005 taxes. Appellant had multiple opportunities to challenge the denial of her Request for Innocent Spouse Relief and raise the issue of abuse, but she did not. DE 10 at 6. She instead chose to ignore the obligation and continue her usual spending habits.

Finally, Appellant's alleged attempt to contact the IRS regarding repayment does not change the conclusion that her failure to pay was voluntary and intentional. Appellant claims that the IRS advised her that she would have to contact a separate department to make repayment arrangements, DE 11 at 7, but there is no evidence that Appellant actually initiated such contact with that department. Nor is there evidence that Appellant made an offer to compromise the matter. DE 1 at 11. An initial inquiry to the IRS followed by voluntary abandonment of any effort to make repayment does not change the finding that Appellant voluntarily and intentionally violated her duty to pay her tax obligation.

## V. *CONCLUSION*

For the reasons discussed herein, it is **ORDERED AND ADJUDGED** that the Bankruptcy Court's Order Granting Defendant's Motion for Summary Judgment is **AFFIRMED**. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 28th day of September, 2015.