[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-10791
_____

D.C. Docket No. 5:14-cv-00485-WTH-PRL


OMAR T. ALSTON,

Plaintiff-Appellant,

versus

MARK SWARBRICK,
Deputy, Marion County Sheriff's Office,
in official and individual capacities,
DANIEL TRAMMEL,
Deputy, Marion County Sheriff's Office,
in official and individual capacities,
SHERIFF OF MARION COUNTY, FLORIDA,

Defendants-Appellees,

FNU DIXON,
Captain, Marion County Sheriff's Office,
in official and individual capacities, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(March 26, 2020)

Before WILSON and GRANT, Circuit Judges, and MARTINEZ,* District Judge.

WILSON, Circuit Judge:

Omar Alston appeals the district court's grant of summary judgment in favor of Officer Mark Swarbrick, Officer Daniel Trammel, and the Marion County Sheriff in his 42 U.S.C. § 1983 action. In his complaint, Alston asserted that Swarbrick falsely arrested him and used excessive force; Trammel failed to intervene; and the Sheriff had a custom or policy of excessive force or failed to adequately train, supervise, and discipline Swarbrick and Trammel. On appeal, Alston contests the district court's grant of summary judgment on each of his claims. After reviewing the record, and with the benefit of oral argument, we reverse the district court's grant of summary judgment to Officer Swarbrick on Alston's false arrest claim and Alston's excessive force claim regarding an alleged three-to-five minute period of pepper spraying, and remand those claims for further proceedings. We affirm the district court's grant of summary judgment to Officer

---

* Honorable Jose E. Martinez, United States District Judge for the Southern District of Florida, sitting by designation.

2

Swarbrick as to any other allegations of excessive force, and likewise affirm the claims against the Sheriff and Officer Trammel.

## I. Background

Alston asserted the following facts at summary judgment.  In June 2011, Officers Swarbrick and Trammel of the Marion County Sheriff's Department were called to investigate a domestic dispute.  A minor in Alston's custody, Q.D.B., had gone to a neighbor's house to ask for a knife to kill Alston.  After Q.D.B. was handcuffed and placed in Trammel's vehicle, Trammel stood with Q.D.B.'s mother, Temekia Morris; Morris's other minor son, L.D.B.; and a crowd of onlookers as Swarbrick approached Alston and began aggressively questioning him about what happened.  Alston acknowledged Swarbrick by saying "Good morning," but ignored his questions.  Swarbrick repeatedly asked Alston what happened, but Alston continued responding only, "Good morning."  Unwilling to talk to Swarbrick about what happened, Alston finally turned around and stated "[f***] you I don't have to answer anything" while walking away from Swarbrick. Swarbrick ran after Alston, slammed him into the street from behind, and arrested him for disorderly conduct under Florida Statute § 877.03.  Swarbrick handcuffed

3

Alston behind his back and threw him in the back of his patrol car while Trammel stood back and watched with Morris, L.D.B., and the other onlookers.

While handcuffed with his hands behind his back in the patrol car, Alston retrieved his cell phone and called his aunt to tell her what was happening. Seeing Alston's movements inside the vehicle, Trammel approached Alston and took his cell phone. Swarbrick then forcefully removed Alston from the vehicle to search him, pulling down his pants and revealing his genitalia in the process. Swarbrick took an additional cell phone and a set of car keys from Alston and threw him back inside the vehicle. Morris then approached Swarbrick to request that he give her the keys and phones he obtained; Swarbrick made her beg for the items before returning them to her.

This led to a heated verbal exchange between Swarbrick, who was sitting in the driver's seat, and Alston, who was still in the backseat with his hands handcuffed behind him. Enraged, Swarbrick jumped out of the vehicle, reached inside, and tried to pull Alston out by jerking him by his arm. Alston repeatedly screamed in pain and yelled that his foot was stuck under the seat. Swarbrick continued jerking harder and then grabbed his pepper spray and sprayed Alston repeatedly in the face. Trammel came over and freed Alston's foot from the other side of the car, thus allowing Swarbrick to pull Alston out of the vehicle. Swarbrick continued to pepper spray Alston's face for three to five minutes while

4

Alston laid on the ground, screaming and yelling, with his hands still restrained. Swarbrick then pulled Alston off the ground and "re-arrested" him for resisting an officer without violence under Florida Statute § 843.02.[1]  The charges were later dropped.

Swarbrick's and Trammel's versions of the facts differed in several aspects from Alston's.  First, their affidavits stated that Alston's behavior when Swarbrick first approached him incited Morris and L.D.B. to run over to Swarbrick, requiring Trammel to run over to provide security for Swarbrick.  Second, neither of their versions of the facts included Alston's first removal from the car following a phone call to his aunt.  In fact, they contested Alston ever making such a phone call. Third, the officers claimed that Alston moved his cuffed hands from behind his back to the front, and that Swarbrick removed Alston from the patrol car so he could reposition Alston's handcuffs because permitting Alston to keep his hands in front could pose a safety risk.  Additionally, Swarbrick claimed that Alston was threatening to urinate on him during their verbal exchange in the car, and that after Alston moved his hands to the front, he started to unbuckle and pull down his pants to make good on the threat.

---

[1] We briefly clear up one confusing factual issue: Alston was under arrest from the time he was tackled and handcuffed by Officer Swarbrick.  The parties' disputes regarding Swarbrick's treatment of Alston after he was arrested go to the reasonableness of the force used to manage the detainee under the relevant circumstances; removing him from the car did not amount to a "second arrest."

5

The district court granted summary judgment in favor of Swarbrick, Trammel, and the Sheriff on all of Alston's claims. It concluded that Swarbrick was entitled to qualified immunity on the false arrest claims and did not use excessive force. As to Trammel, the court held that he had no reason to intervene because Alston did not use excessive force. Finally, the court concluded that the Sheriff was not liable because neither Swarbrick nor Trammel had committed a constitutional violation. Alston brought this appeal.

## II. Qualified Immunity

We review a district court's rulings on a motion for summary judgment de novo. *See Kingsland v. City of Miami*, 382 F.3d 1220, 1225 (11th Cir. 2004). "We view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-movant." *Id.* at 1226.

When determining whether a defendant is entitled to qualified immunity, we resolve any issues of material fact in favor of the plaintiff. *Stephens v. DeGiovanni*, 852 F.3d 1298, 1313 (11th Cir. 2017). Police officers acting in their discretionary authority are entitled to qualified immunity from suit unless a plaintiff can establish that (1) the officer violated a constitutional right, and (2) the right violated was clearly established. *Grider v. City of Auburn*, 618 F.3d 1240, 1254 (11th Cir. 2010).

6

"[I]t is well established that a warrantless arrest without probable cause violates the Fourth Amendment and forms a basis for a section 1983 claim." *Carter v. Butts Cty.*, 821 F.3d 1310, 1319 (11th Cir. 2016) (internal quotation mark omitted) (alteration accepted).  For probable cause to arrest to exist, an arrest must be objectively reasonable based on the totality of the circumstances.  *Kingsland*, 382 F.3d at 1226.  This standard is met "when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime."  *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007).  But arresting an individual without probable cause will not remove the shield of qualified immunity so long as the officer had "arguable probable cause" for the arrest.  *Id.*  Arguable probable cause exists if "reasonable officers in the same circumstances and possessing the same knowledge as the [d]efendants could have believed that probable cause existed to arrest the plaintiff."  *Davis v. Williams*, 451 F.3d 759, 762 (11th Cir. 2006) (internal quotation mark omitted).

### A. Disorderly Conduct

Alston argues that Swarbrick lacked probable cause to arrest him for disorderly conduct, and was therefore not entitled to qualified immunity, because his words did not incite onlookers to breach the peace.  He claims that the district

7

court improperly drew factual inferences in favor of the officers when it found otherwise.

Florida Statute § 877.03 defines disorderly conduct as acts "of a nature to corrupt the public morals, or outrage the sense of public decency, or affect the peace and quiet of persons who may witness them."  Probable cause under § 877.03 cannot be based on "mere words."  *Davis*, 451 F.3d at 766; *see State v. Saunders*, 339 So. 2d 641, 643–44 (Fla. 1976) (limiting the application of § 877.03 so that it would only apply to "fighting words" or "words like shouts of 'fire' in a crowded theatre" to avoid First Amendment concerns); *cf. Smith v. State*, 967 So. 2d 937, 939–40 (Fla. 2d DCA 2007) (holding that defendant directing loud and vulgar language towards police officer outside of a relatively busy bank did not support a conviction for disorderly conduct); *Barry v. State*, 934 So. 2d 656, 658–59 (Fla. 2d DCA 2006) (collecting cases; holding that defendant screaming obscenities at police officer while pointing and shaking a finger in her face did not support a conviction for disorderly conduct despite crowd of observers).

Here, the district court improperly accepted the officers' version of the facts and drew inferences in their favor.  The officers attested that Alston's obscenities incited Morris and L.D.B. to run toward Swarbrick, which in turn caused Trammel to run over to provide security to Swarbrick.  However, in his affidavit and Third Amended Complaint, Alston states that Trammel, Morris, and L.D.B. stood back

8

with other onlookers during the arrest and did not intervene.  Therefore, a genuine dispute of material fact exists as to when, or if, Morris and L.D.B. ran over to Swarbrick and Alston, and whether Alston's comments amounted to disorderly conduct.

The court also erred by concluding that Alston's version of events, if true, would establish probable cause for his arrest.  According to Alston, Swarbrick arrested him based merely on him refusing to answer questions and spouting obscenities while walking away.  But by 2011, it was clearly established that words alone cannot support probable cause for disorderly conduct—including profanity regarding police officers.  *See, e.g.*, *Davis*, 451 F.3d at 766; *Gold v. City of Miami*, 121 F.3d 1442, 1446 (11th Cir. 1997).  Under those facts, no reasonable officer in Swarbrick's position could have believed there was probable cause to arrest Alston under the Florida disorderly conduct statute.  Therefore, the district court improperly concluded that Swarbrick was entitled to qualified immunity on that basis.

### B. Resisting an Officer Without Violence

Officer Swarbrick also argues that he had probable cause to arrest Alston for resisting an officer without violence, claiming that Alston impeded his lawful investigation of the incident involving Q.D.B.  A conviction for resisting an officer without violence under Florida Statute § 843.02 requires that "(1) the officer was

9

engaged in the lawful execution of a legal duty; and, (2) the actions of the defendant obstructed, resisted or opposed the officer in the performance of that legal duty." *V.L. v. State*, 790 So. 2d 1140, 1142 (Fla. 5th DCA 2001). "An essential element of the offense of resisting a law enforcement officer without violence is that the arrest must be lawful." *Id.* at 1143.

We conclude that, under Alston's version of the facts, Swarbrick did not possess arguable probable cause for arresting Alston under the resisting without violence statute. At the time of the arrest it was clearly established that, as with the disorderly conduct statute, "mere words" would not suffice to provide probable cause for resisting without violence. *See Davis*, 451 F.3d at 766. And under Alston's version of the facts, he did not physically obstruct Swarbrick's path or otherwise prevent him from conducting his investigation as to Q.D.B. *See id.* at 765. Alston merely declined to cooperate or provide useful information. His failure to answer Officer Swarbrick's questions—and even his profanity-laced response—were not even arguably sufficient to support probable cause under § 843.02. *See id.* Because Officer Swarbrick lacked arguable probable cause to arrest Alston under this (or any other) statute, Alston's false arrest claim must proceed.

### III. Excessive Force

Alston then argues that because Swarbrick lacked arguable probable cause to arrest him in the first place, any amount of force was excessive under the Fourth Amendment. He also argues that the district court based its determination that Swarbrick used a reasonable amount of force on its erroneous finding that Alston repositioned his handcuffs.

"The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002). "[E]ven de minimis force will violate the Fourth Amendment if the officer is not entitled to arrest or detain the suspect." *Reese v. Herbert*, 527 F.3d 1253, 1272 (11th Cir. 2008). However, under "this Circuit's law[,] a claim that any force in an illegal stop or arrest is excessive is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim." *Bashir v. Rockdale County*, 445 F.3d 1323, 1331 (11th Cir. 2006) (citation omitted). We therefore disagree with Alston that he may support an excessive force claim on the theory that *any* force is excessive if the underlying arrest was illegitimate.

Even after that rule is applied, however, the entirety of Alston's excessive force claim is not subsumed into his false arrest claim. In particular, Officer Swarbrick's alleged three to five minutes of pepper spraying may qualify as a

11

sufficient "discrete constitutional violation relating to the manner in which an arrest was carried out" that "is independent of whether law enforcement had the power to arrest." *Id.* at 1332. To determine whether Officer Swarbrick is entitled to qualified immunity as to that use of force, we ask whether an "objectively reasonable officer in the same situation could have believed the use of force was not excessive." *Brown v. City of Huntsville*, 608 F.3d 724, 738 (11th Cir. 2010). In reviewing the use of force, a court must consider "[1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*

We note at the outset that the district court made an improper credibility determination when it concluded that Alston could not have made his alleged phone call without moving his hands from behind his back to in front of his body. Its reliance on *United States v. Calderon* was misplaced because that case said that testimony is incredible as a matter of law only if the stated facts "could not have occurred under the laws of nature." *See* 127 F.3d 1314, 1325 (11th Cir. 1997). That is not the case here, as it is not inconceivable that Alston could have made a phone call with his hands behind his back, and a jury could reasonably conclude

that he did.[2]  Accordingly, assuming that Alston's hands were handcuffed behind his back and he was restrained in the back of Swarbrick's vehicle, he posed a minimal threat to the officers—who allege only that he was threatening to urinate on them.  But we judge "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *See Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993).  While Alston yelling that his foot was stuck could have indicated to a reasonable officer that Alston was not actively resisting removal from the vehicle, a reasonable officer may have believed— following a heated verbal exchange—that Alston was intentionally resisting and falsely claiming that his foot was stuck so as not to cooperate.  Accordingly, Officer Swarbrick is entitled to qualified immunity with regards to the initial force used to remove Alston from the vehicle.

But Alston's allegations go further.  Alston alleges a three-to-five minute period during which Officer Swarbrick continuously used pepper spray on his face while he lay on the ground helplessly.  Under this Circuit's caselaw, such a prolonged use of pepper spray on a non-resisting and handcuffed detainee would violate the detainee's clearly established Fourth Amendment rights.  *See Vinyard v.*

---

[2] In his affidavit, Alston states that he retrieved his cell phone while his hands were handcuffed behind his back and called his aunt.  Based on this record, it is not clear whether Alston claims to have made the call by voice dialing and speakerphone, or by manually dialing the number. Regardless, it is not inconceivable that he placed a call with his hands behind his back.

13

*Wilson*, 311 F.3d 1340, 1349 (11th Cir. 2002).  Of course, the finder of fact may ultimately disbelieve Alston's testimony and conclude that the alleged period of prolonged pepper spraying did not occur.  Nonetheless, viewing the facts in the light most favorable to Alston, he has at least presented a genuine dispute of material fact regarding Swarbrick's use of force as to that period of pepper spraying, and thus, granting summary judgment in favor of Swarbrick was improper.

### IV. Failure to Intervene

Alston challenges the district court's grant of summary judgment on his claim that Trammel failed to intervene when Swarbrick pulled him from the patrol car and used excessive force.  "An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force" can be liable for failing to intervene, so long as he "was in a position to intervene yet failed to do so."  *Hadley v. Gutierrez*, 526 F.3d 1324, 1330–31 (11th Cir. 2008) (alteration accepted).

In his summary judgment affidavit, Alston claimed that Trammel stood off with Alston's family and the other onlookers while Swarbrick used excessive force against him.  However, he also claimed that, at some point while Swarbrick was jerking him out of the patrol car, Trammel opened the driver's side back passenger door and freed his foot that was stuck.  And, in his Third Amended Complaint, he

14

stated that Trammel helped Morris restrain L.D.B., who was yelling at Swarbrick, while Swarbrick pepper sprayed him.  Alston did not allege what further steps Trammel should have taken or that he had the opportunity to take further steps while also restraining L.D.B.  Thus, the record does not support that Trammel was able to intervene but failed to do so, and therefore, he cannot be liable for failing to intervene.  We affirm the district court's grant of summary judgment on this claim.

## V. Sheriff's Liability

Alston's final argument is that the district court improperly granted summary judgment on his claim against the Sheriff because the officers were liable for several constitutional violations and he showed that the Sheriff failed to train the officers and created a policy or custom of excessive force.

For a supervisor to be liable under § 1983, he must be causally connected to the constitutional issue by having an unlawful policy or custom.  *See Skop*, 485 F.3d at 1145; *Gray ex rel. Alexander v. Bostic*, 458 F.3d 1295, 1308 (11th Cir. 2006).  A supervisor can also be liable under § 1983 if he is deliberately indifferent to a lawful policy being repeatedly violated or a failure to train resulting in a deprivation of people's rights.  *See Keith v. DeKalb Cty.*, 749 F.3d 1034, 1052 (11th Cir. 2014); *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986).

15

The district court properly granted summary judgment in favor of the Sheriff.  Alston provided practically no evidence to support his claims of a policy or custom of excessive force, deliberate indifference to repeated violations, or a failure to properly train.  Indeed, the evidence presented was sufficient for a jury to conclude that Swarbrick was up to date on his training.  Therefore, no reasonable jury could conclude that the Sheriff was causally connected to any potential violation of Alston's constitutional rights.

Accordingly, we reverse and remand to the district court on Alston's claims of false arrest and excessive force as to the alleged period of pepper spraying, and otherwise affirm the district court.

**AFFIRMED IN PART, REVERSED AND REMANDED IN PART.**