[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14702
Non-Argument Calendar

_____

D.C. Docket No. 9:18-cv-81442-RAR


ANTONY LEWIS,

Plaintiff-Appellant,

versus

THE SCHOOL BOARD OF PALM BEACH COUNTY, FLORIDA,
a Florida Profit Corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(March 9, 2021)

Before ROSENBAUM, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Antony Lewis appeals the district court's grant of summary judgment in favor of his employer, the School Board of Palm Beach County, Florida (the "Board"), on his race-discrimination claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2a; the Florida Civil Rights Act ("FCRA"), Fla. Stat. §§ 760.01-760.11; and 42 U.S.C. § 1981.  On appeal, Lewis argues that he presented either direct evidence or a "convincing mosaic" of circumstantial evidence showing that the Board took adverse action against him because of his race.  After careful review, we vacate and remand.

## I.

The undisputed facts are these.  Lewis, who is white, was Assistant Principal at Lake Park Elementary School for 17 years until his contract expired on June 30, 2017.  In June 2016, Michelle Fleming became principal at Lake Park.  Fleming is Portuguese and identifies as Caucasian, but she has been a member of the Hispanic Chamber of Commerce and the Florida Association of Latino Administrators.  At the time Fleming was hired, Lake Park was under the supervision of Regional Superintendent Camille Coleman, a Black woman, who oversaw 44 area schools. Because Lake Park was one of the eight worst-performing schools in the region, Coleman supervised its principal directly.

At a meeting at the beginning of the 2016-17 year, Coleman spoke to the principals in her region about the need for school staff to "resemble" the student

2

body in terms of race, gender, and language.  Lake Park had a large African-American population.

In September 2016, Coleman performed an "instructional review" at Lake Park, in which she visited the campus to observe instructional practices and school operating procedures.  During the review, she observed a discipline practice called "Think Time," in which students who misbehaved were placed in the corner, sometimes facing the wall.  She did not believe "Think Time" was consistent with School Board policies and questioned Lewis about the practice.  However, Lewis was not in charge of administering discipline at Lake Park—those duties had rested with a teacher, Lisa Wear, for several years.  Coleman was concerned that Lewis had not been handling the discipline plan and asked him to work with Wear to change the part of the plan that included placing students in the corner.

The next day, Lewis learned that a parent had complained that her child had received a cheese sandwich instead of a hot lunch as a disciplinary measure and was reminded that this was not an appropriate punishment.  In addition, he learned that Wear had decided to transfer to another school.  Worried that he might have to handle the discipline plan on his own, he began to consider leaving Lake Park.  His fears came true, as he came to oversee most of the school's discipline.  As the school year went on, he became resentful of Fleming and the changes she was making at Lake Park, believing that his fellow administrators were not "team players."

At the end of the school year, Fleming decided not to renew Lewis's contract as Assistant Principal. As she was required to do, she informed Coleman about her decision beforehand. Coleman later told Lewis that she would recommend him to be an Assistant Principal at another school with different demographics. Veronica Stevens, who is black, replaced Lewis as Assistant Principal at Lake Park. After the non-renewal decision, Lewis began teaching fourth and fifth grade at a different elementary school.

## II.

Lewis sued the Board in Florida state court, and the Board removed the case to federal district court. In an amended complaint, Lewis alleged, as relevant here, race discrimination under Title VII, the FCRA, and § 1981. After discovery, the Board moved for summary judgment. Pursuant to the Southern District of Florida's local rule 56.1,[1] it attached a statement of undisputed material facts to support its motion. In a section titled "Dr. Lewis's Performance and Behavior Issues During the 2016/2017 School Year," the Board included the following facts in paragraphs 51-55, which it supported with pinpoint citations to the record:

---

[1] Local Rule 56.1 requires a motion for summary judgment and the opposition to be accompanied by a separate statement of material facts. The movant's statement "shall list the material facts that the movant contends are not genuinely disputed," and the opponent's statement "shall clearly challenge any purportedly material fact asserted by the movant that the opponent contents is genuinely in dispute." S.D. Fla. R. 56.1(a). If a fact in one party's statement is not controverted by the other party's statement, the court may deem that fact admitted if it finds that the fact is supported by properly cited record evidence. *Id.* 56.1(c).

- Lewis was tasked with creating a "double down/push in" plan to tutor students struggling in science, but he never created the requested plan.

- In late February 2017, reports were being made that students were still receiving cheese sandwiches instead of hot lunches for bad behavior.

- By the end of the school year, Fleming felt that Lewis did not support her and was undermining her authority with staff and teachers.

- On April 14, 2017, Fleming decided not to renew Lewis's assistant principal contract because of his performance issues with the discipline plan, the science "double down/push in" plan, and her feeling that he did not support her.

In his opposing statement of material facts, Lewis disputed all of these facts with the same assertion: "For the 2016/2017 year, Fleming gave Plaintiff a positive evaluation without citing any of the performance or behavioral issues alleged herein."

The Board also provided an affidavit from Heidi Riddle, Coleman's secretary, who stated that she "never learned that Antony was going to be reappointed to another position because of the color of his skin." This contradicted an entry in Lewis's journal dated May 23, 2017, in which he wrote that Riddle told him that the decision not to renew his contract had nothing to do with his job performance but, rather, he was being moved due to the color of his skin.

The district court granted the Board's motion for summary judgment. It found that Lewis's reference to Fleming's evaluation of him did not actually dispute any of the facts in paragraphs 51–55 of the Board's statement of material facts and

5

deemed those facts admitted pursuant to Local Rule 56.1. Next, it found that the Board had presented legitimate, non-discriminatory reasons for demoting Lewis, and Lewis had failed to point to any evidence of pretext. Last, it found that Lewis did not establish a convincing mosaic of circumstantial evidence of race discrimination. Lewis now appeals.

## III.

We review the grant of summary judgment *de novo*. *Alston v. Swarbrick*, 954 F.3d 1312, 1317 (11th Cir. 2020). "We view the evidence and all factual inferences therefrom in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-movant." *Id.* (quotation marks omitted). Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard set out in Rule 56 applies "with equal force to claims of employment discrimination" as to any other type of claim.[2] *Jefferson v. Sewon America, Inc.*, 891 F.3d 911, 920 (11th Cir. 2018).

---

[2] Citing *Delgado v. Lockheed-Georgia Co.*, 815 F.2d 641, 644 (11th Cir. 1987), and *Batey v. Stone*, 24 F.3d 1330, 1336 (11th Cir. 1994), Lewis contends that summary judgment is "especially disfavored" in employment-discrimination cases because the complicated question of an employer's motive is more appropriately decided by a jury. He laments that "these early principles seem to have largely eroded away over time" and suggests that "perhaps a swing back toward the cases cited above may be in order." But in fact, to the extent that they applied a different summary-judgment standard in employment-discrimination cases than in other cases, in accordance with our prior-precedent rule, we expressly abrogated them while sitting en banc. *See Chapman v AI Transport*, 229 F.3d 1012, 1025-26 (11th Cir. 2000) (*en banc*) ("The long and short

At the summary-judgment stage, the judge's function is not to weigh the evidence but to determine if there is a "genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* Therefore, summary judgment may be granted "[i]f the evidence is merely colorable or is not significantly probative." *Id.* at 249–50 (citations omitted).

## IV.

Under Title VII, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). A plaintiff may establish discrimination using direct evidence, circumstantial evidence, or statistical proof. *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010). Claims brought under the FCRA and § 1981 are subject to the same legal framework as Title VII claims. *Id.* at 1271; *Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009).

## A.

---

of it is that the summary judgment rule applies in job discrimination cases just as in other cases. No thumb is to be placed on either side of the scale.").

Lewis first contends that he has shown direct evidence of discrimination.[3] Direct evidence of discrimination is evidence that reflects a discriminatory attitude correlating to the discrimination complained of by the employee without any inference or presumption. *Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1156 (11th Cir. 2020). We have explained that under this standard, only "the most blatant remarks, whose intent could mean nothing other than to discriminate on the basis of some impermissible factor," are direct evidence of discrimination. *Id.* (quotation marks omitted). If a statement suggests, but does not prove, a discriminatory motive, then it is circumstantial evidence. *Id.* To be direct evidence of discrimination, a statement showing discriminatory intent must have been made by a person involved in the challenged decision. *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). Further, as our Court has construed the term "direct evidence," "remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination." *Id*.

Lewis has not presented direct evidence that the non-renewal of his contract was due to his race. Taking the facts in the light most favorable to Lewis, we assume that Coleman, as Fleming's direct supervisor, was a decisionmaker regarding the

---

[3] The Board argues that Lewis has waived this argument because he did not raise it in his response to its summary-judgment motion below. But a party "cannot waive the application of the correct law or stipulate to an incorrect legal test." *Jefferson*, 891 F.3d at 923 (holding that the district court erred by applying the circumstantial-evidence framework where the plaintiff presented direct evidence of discrimination, even though the plaintiff characterized her evidence as circumstantial).

non-renewal of his contract.  Lewis argues that Coleman's instruction to principals to ensure their staff "resembles" their student body demographically is direct evidence of discrimination.  But even assuming without deciding that it is, that discussion occurred during a meeting at the beginning of the school year, not as part of the decisionmaking process as to Lewis's contract.  *See Standard*, 161 F.3d at 1330.  So under our precedent, it cannot constitute direct evidence of discrimination in the decision to demote him.

Next, Lewis argues that Coleman's comment that she would recommend him to be the assistant principal at a school with different demographics is direct evidence of discrimination. But Coleman's statement was not blatant enough to be direct discrimination.  *See Fernandez*, 961 F.3d at 1156.  The word "demographics" is too broad, without more, to rise above the level of circumstantial evidence.  In fact, even Lewis himself, in a text message sent after his conversation with Coleman, interpreted her statement to refer to the economic status of the students at the school, not to his race.  Neither of these statements provides evidence of discriminatory motive without additional inferences or presumptions.

Finally, Lewis points to the statement by Riddle, Coleman's secretary, that he was being transferred due to the color of his skin. [4]  But the district court was correct

---

[4] Lewis states on appeal simply that "someone" told him that he was being moved due to the color of his skin.  However, the record below establishes that Riddle is the alleged declarant associated with this statement.  And "[t]he possibility that unknown witnesses will emerge to

9

not to consider this statement, because it was hearsay that Riddle refuted in a sworn affidavit. *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (holding that hearsay cannot be considered at the summary judgment stage where the declarant has given sworn testimony contradicting the hearsay statement).

As Lewis did not establish any direct evidence of discrimination, we turn to whether he can prove his case with circumstantial evidence.

**B.**

We ordinarily evaluate employment-discrimination claims based on circumstantial evidence under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Alternatively, "[a] triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011) (quotation marks omitted). A plaintiff may establish a "convincing mosaic" with "evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements . . . , and other bits and pieces from which an inference of discriminatory intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's

---

provide testimony on this point is insufficient to establish that the hearsay statement could be reduced to admissible evidence at trial." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012).

justification is pretextual." *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019) (quotation marks omitted). Inferences based upon speculation are not reasonable. *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1301 (11th Cir. 2012) (quotation marks omitted).

Lewis contends that he has presented a convincing mosaic of circumstantial evidence sufficient to raise an inference of racial discrimination. Specifically, he argues that discrimination can be inferred from the combination of the following facts: (1) Coleman's instruction to principals that their staff should "resemble" the student body; (2) Coleman's statement that she would recommend that he be reassigned to a school with different demographics; (3) his positive performance review in the 2016-17 school year; and (4) his replacement by a black woman.

At the outset, we note that Lewis has abandoned any challenge to the district court's application of Local Rule 56.1, deeming admitted the facts in paragraphs 51-55 of the Board's statement of undisputed material facts, because he did not raise that issue in his initial brief. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681-82 (11th Cir. 2014). Nevertheless, we must still review the movant's evidence "to determine if there is, indeed, no genuine issue of material fact." *Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009).

Although this is a close case, we conclude that there is sufficient circumstantial evidence for a reasonable jury to return a verdict in Lewis's favor on

his claim of race discrimination. To begin with, Regional Superintendent Coleman's statement that school staff should resemble the student body, combined with evidence that Lake Park had a large number of Black students, that Lewis was replaced by a Black woman, and that Coleman offered to recommend Lewis for another school with different "demographics," which a jury could interpret to refer to racial composition, support a reasonable inference that Lewis's race played a role in the non-renewal decision. *See Lewis*, 934 F.3d at 1185.

Such an inference is further supported by evidence "that the employer's justification is pretextual." *Id.* First, Coleman's offer to recommend Lewis for a school with a different racial composition is difficult to square with the Board's race-neutral justifications for terminating him. The evidence reflects that Coleman was required to approve non-renewal decisions made by Principal Fleming. So Coleman's offer to recommend Lewis for the same type of position at another school with a different racial composition casts doubt on the performance-based reasons the Board offered to justify the non-renewal decision.

Second, a reasonable jury could conclude that the non-race-related reasons that Fleming gave for the non-renewal decision are inconsistent with the positive performance evaluation she gave Lewis over the same period. We acknowledge that an employer's reasons for terminating an employee will not necessarily be inconsistent with a positive performance review over the same period. But here,

Fleming said she decided not to renew Lewis's contract a year after working with him because, over that year, he was undermining her authority and improperly disciplining students. A reasonable jury could conclude that, if she really thought that, she would not have rated him positively in an evaluation that covered that same limited period.

While there is substantial evidence in the record to support the Board's proffered reasons for the non-renewal decision, our function at summary judgment is not to weigh the evidence but to determine if there is a "genuine issue for trial." *See Anderson*, 477 U.S. at 249. For the reasons we have explained above, we conclude that sufficient circumstantial evidence in the record, considered as a whole and viewed in the light most favorable to Lewis, creates a genuine dispute of fact as to whether the non-renewal decision was motivated by Lewis's race. *See Smith*, 644 F.3d at 1328.

We therefore vacate the grant of summary judgment and remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED.**