[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11097
Non-Argument Calendar

_____

D.C. Docket No. 3:18-cv-00293-TJC-JRK

DARRELL WAYNE BUTLER,

Plaintiff - Appellant,

versus

SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

Defendant,

WILLIAM B. BLITCH,
c/o Captain sued in their individual capacities,
and sued in their official capacities,
JOHN DOE TOMLIN,
c/o Sergeant sued in their individual capacities,
and sued in their official capacities,
R. LEE,
c/o Sergeant sued in their individual capacities,
and sued in their official capacities,
JOHN DOE BUTLER,
c/o Sergeant sued in their individual capacities,
and sued in their official capacities,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(September 21, 2021)

Before NEWSOM, BRASHER and MARCUS, Circuit Judges.

PER CURIAM:

Darrell Butler, a state prisoner proceeding pro se, appeals from the district court's grant of summary judgment in favor of prison officials, in his 42 U.S.C. § 1983 action alleging that the officials had used excessive force in violation of the Eighth Amendment during a cell extraction.  On appeal, Butler argues that the district court erred in granting summary judgment to the officials, on the ground that there was a genuine dispute of material fact concerning whether the officials used excessive force.  After careful review, we affirm.

We review de novo the district court's decision on a motion for summary judgment.  Terrell v. Smith, 668 F.3d 1244, 1249–50 (11th Cir. 2012).  Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[G]enuine disputes of facts are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant."  Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009) (quotation omitted).  "For factual

2

issues to be considered genuine, they must have a real basis in the record." Id. (quotation omitted). "[M]ere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005). Ordinarily, we view the facts in the light most favorable to the nonmoving party, but "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). Accordingly, when uncontroverted video evidence is available, we must view the facts in the light depicted by the video recording. Id. at 380–81.

The relevant background -- based on the summary judgment record, which included a handheld video recording of the entire incident -- is this. On October 6, 2017, Butler, a Florida state prisoner, requested a "psychological emergency," was placed in a shower cell, and spoke to a doctor. After Butler spoke to the doctor, a security officer ordered him to submit to handcuffs. Butler refused and requested officers to inventory his property in the cell. Captain William Blitch approached Butler and ordered him to submit to handcuffs for relocation to the medical clinic for placement on self-harm observation status ("SHOS"). Butler again refused.

Blitch left and returned with a cell extraction team. In an incident report describing the extraction, Blitch noted that the prison warden had authorized the cell

3

extraction, and that Blitch had ordered the cell extraction team members to "utilize the minimal amount of force necessary to bring [Butler] into compliance with lawful commands." The video recording shows Blitch giving an introductory statement and five members of the team introducing themselves and explaining their responsibilities, including Sergeant Matthew Butler,[1] Sergeant Raymond Lee, and Sergeant Teddy Tomlin, the three other defendants in this appeal.

At that point, Captain Blitch again ordered Butler to submit to hand restraints, told Butler that his failure to submit would result in the cell extraction team being used, and asked if Butler understood his orders. Nevertheless, Butler repeatedly refused to allow himself to be handcuffed, lunged at the officers when they opened the shower cell door, and hung onto an officer's shield and the cell bars. The officers repeatedly ordered Butler to "stop resisting" and put his hands behind his back, but he continued to refuse as the officers attempted to restrain him. At one point, Sergeant Tomlin, who was holding a pair of handcuffs, started using "distractionary" punches on Butler to get him to let go of the cell bars. About ten seconds later, members of the extraction team moved Butler to the back of the cell, and Sergeant Butler remembered "inadvertently tripp[ing] over the shower curb, causing [Butler]

---

[1] Because the plaintiff and one of the defendants share the same last name, we only refer to the latter as "Sergeant Butler."

to strike his head against the shower wall and floor." The officers again ordered Butler to comply and struck him in order to apply restraints.

The video shows that the extraction team members struggled with Butler for about thirty seconds, until one of them announced that they had secured Butler in handcuffs. The team members then put leg restraints on Butler and helped him stand up and walk out of the cell. Once they applied restraints, the officers stopped using any force. The entire incident from the time the extraction team opened the cell door to the time Butler was being assisted to his feet lasted approximately ninety seconds.

When Butler left the cell, he had a visible bleeding abrasion on his head, with spots of blood on his upper body. The officers took him to a medical exam room, but he refused treatment, saying "I don't want to be touched," and prison officials were unable to assess the size of the abrasion on his forehead. Butler later alleged that he asked the prison officials to take photos of his injuries, but they refused. Butler was then taken to a shower cell, strip searched, given a change of clothes, and placed in SHOS housing.

Butler claimed that during the cell extraction, he received gashes, lacerations, permanent scarring to his head, black eyes, a loose tooth, and numerous bruises and abrasions to his left arm. He also claimed to have lost a lot of blood. However, the officials submitted a declaration from Dr. Timothy Whalen at the Florida Department of Corrections, who said that the abrasion Butler suffered was not

serious and that Butler did not mention a black eye or loose tooth at the initial evaluation or subsequent SHOS stay.  On October 16, 2017, Butler submitted a request to see a doctor, and this evaluation took place on October 31.  That doctor reported that although Butler had "multiple complaints," the examination indicated that there were "no obvious sequelae of any injuries sustained on Oct 6 '17 incident."

On February 26, 2018, Butler filed this § 1983 complaint, alleging that Sergeants Tomlin, Lee, and Butler used excessive force in violation of the Eighth Amendment, and that Captain Blitch failed to intervene to prevent the use of excessive force.[2]  The district court granted summary judgment in favor of the prison officials, finding that the "undisputed evidence establishes that Defendants were justified in using force to accomplish a legitimate security interest, i.e., to obtain [Butler's] compliance with the order to submit to hand restraints, and that, at worst, [Butler] received minimal injuries consistent with the amount of force which was necessary to restrain him."  This appeal followed.

In an Eighth Amendment excessive force case, the core inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Wilkins v. Gaddy, 559 U.S. 34, 37

---

[2] Butler also named Florida Department of Corrections Secretary Julie Jones as a defendant.  In its initial screening pursuant to the Prison Litigation Reform Act, the district court dismissed her from the complaint for two reasons: she was entitled to official immunity and Butler failed to state a claim for relief against her.  Butler does not appeal her dismissal from the case.

(2010) (quotation omitted).  To determine whether force was applied maliciously and sadistically to cause harm, we consider "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of the injury inflicted" upon the prisoner.  Whitley v. Albers, 475 U.S. 312, 321 (1986) (quotations omitted, alterations accepted).  Additionally, courts look at "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them, and any efforts made to temper the severity of a forceful response."  Id.   An officer's immediate offer of medical assistance demonstrates an effort to temper the severity of the response.  Cockrell v. Sparks, 510 F.3d 1307, 1312 (11th Cir. 2007).  Moreover, we must give a "wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance."  Id. at 1311 (quotations omitted, alterations accepted).  In sum, a prisoner may avoid summary judgment "only if the evidence viewed in the light most favorable to him goes beyond a mere dispute over the reasonableness of the force used and will support a reliable inference of wantonness in the infliction of pain."  Brown v. Smith, 813 F.2d 1187, 1188 (11th Cir. 1987) (per curiam).

Here, the district court did not err in concluding that Butler failed to establish, on the summary judgment record in this case, a violation of his Eighth Amendment right to be free from the excessive use of force.  For starters, the video and the

parties' evidence reveal no genuine issue of material fact concerning whether the officers' force was applied in a good-faith effort to maintain or restore discipline. Indeed, it is undisputed that the officers used force for the purpose of transporting Butler to SHOS housing for his psychological emergency. See Cockrell, 510 F.3d at 1312 ("That the minimal force was used to quiet Cockrell to care for another inmate in need of medical attention, instead of for some other reason, . . . weighs against a finding of excessive force.").

Further, Butler refused multiple orders to submit to hand restraints for the relocation. When the extraction team arrived at Butler's cell, Blitch warned Butler that his failure to follow orders would result in the deployment of the cell extraction team. Then, when Blitch opened the cell door, Butler lunged forward. The officers told Butler to stop resisting and put his hands behind his back multiple times, but Butler did not comply. Only then did Sergeant Tomlin start using "distractionary" punches, and during these punches, Blitch ordered Butler to "let go of the shield." In the video recording, the punches appear small and targeted, in an effort to get Butler to comply with the officers' orders.

Once Butler and the extraction team members moved to the back of the cell, the video does not clearly show what happened, and Butler says that Sergeants Butler and Lee hit him in the face. However, during that 40-second or so time period, the officers can be heard again ordering Butler to comply, and the video shows them

8

attempting to secure him in handcuffs. As the district court put it, "[d]espite being in a chaotic situation in a confined space, the video depicts the extraction team as relatively calm and professional while attempting to fully restrain [Butler]." After the officers handcuffed Butler, they did not use any more force. See Mobley v. Palm Beach Cty. Sheriff Dep't, 783 F.3d 1347, 1356 (11th Cir. 2015) (finding no excessive force where "the officers did not apply any force after [the plaintiff] finally surrendered his hands to be cuffed," and distinguishing cases like Lee v. Ferraro, 284 F.3d 1188, 1198 (11th Cir. 2002), where force was applied after "the plaintiff was already arrested and in handcuffs"). The officers also videotaped the entire cell extraction and its aftermath.[3] And, importantly, the officers immediately took Butler to receive a medical examination after the incident. See Cockrell, 510 F.3d at 1312. In short, there is no genuine dispute of fact concerning whether the officers were justified in using force or whether they used only the amount of force necessary to handcuff Butler. The record simply does not support an inference of wantonness in the infliction of pain. See Scott, 550 U.S. at 380; Brown, 813 F.2d at 1188.

The district court also did not err in finding that, "at worst, [Butler] received minimal injuries consistent with the amount of force which was necessary to restrain him." Although Butler alleges that he sustained injuries in addition to the head

---

[3] Butler notes that in some parts of the video, he cannot be seen, and his voice is inaudible. However, the video still documents the entire incident.

abrasion and that the head abrasion was serious, he refused immediate medical attention after the cell extraction and the nurse documented the only visible injury -- a forehead abrasion.  The video shows that Butler had spots of blood on his face, arm, shirt, and hands, but it also reveals that he was able to walk to the medical exam room and later change his clothes without difficulty.  Dr. Whalen added that during Butler's SHOS stay, the abrasion on his head "was noted to be midline and superficial," and Butler did not mention other injuries.  Moreover, Butler did not request medical attention until ten days after the cell extraction incident.  At that evaluation, the doctor recognized Butler's complaints but found no obvious consequences of any injuries from the cell extraction, and no treatment was warranted.  Accordingly, Butler has not created a genuine dispute of material fact about the extent of his injury such that this factor would favor a finding of excessive force.  See Wilkins, 559 U.S. at 38 ("Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts.").

Accordingly, the district court did not err in granting summary judgment to the prison officials because no reasonable jury could find that they violated his Eighth Amendment rights, and we affirm.[4]

---

[4] Because the officers did not use excessive force, Butler also cannot maintain a failure-to-intervene claim against Blitch.  See Alston v. Swarbrick, 954 F.3d 1312, 1321 (11th Cir. 2020) ("An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be liable for failing to intervene, so long as he was in a position to intervene yet failed to do so." (quotations omitted)).

**AFFIRMED.**